**YOUNG MOTOR COMPANY, Inc., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 5628.**

United States Court of Appeals First Circuit.

Heard May 4, 1960.

Decided Aug. 16, 1960.

---

Charles V. Ryan, Springfield, Mass., for petitioner.

Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, A. F. Prescott, and Frederick E. Youngman, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a petition by a corporate taxpayer to review a decision of the Tax Court upholding a tax for the years 1950, 1951, and 1952 under section 102(a) of the Internal Revenue Code of 1939. This section imposes an additional tax upon corporations (other than personal holding companies) " * * * if such corporation * * * is * * * availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed * * *." [1] The evidence, much of which was stipulated, has been largely set forth in the opinion of the Tax Court. 1959, 32 T.C. 1336. Taxpayer does not quarrel with the subsidiary findings, but only with the court's ultimate conclusions and with certain claimed rulings.

Briefly summarizing the findings, taxpayer was incorporated in 1929 to conduct the Oldsmobile automobile agency of one Young. Young and his wife are the joint holders of virtually all of the stock, and Young is the principal operating officer. In its early years taxpayer's growth was not unattended by financial difficulties, but after 1945 it considerably increased its surplus, and must be regarded as a successful business enterprise. No dividends have ever been paid. Since 1941 Young has received no salary.[2] Real estate occupied by taxpayer belongs to Young, and the rent charged has approximated only the actual maintenance costs. Since 1945 substantial loans were made by taxpayer to Young and to enterprises in which Young was interested, all but one without security, and, until 1952, all without interest. In addition, taxpayer has invested other surplus funds in investments that have no direct relationship to its business. In the years in question taxpayer's net income after taxes was $55,262, $37,402 and $16,374, respective-

---

1. 26 U.S.C. § 102(a) (as amended by § 103(d) of the Revenue Act of 1941).

2. Prior to 1941 Young failed to take down $48,623 in accumulated salary, although he had paid his taxes on it. $29,623 of this amount has still not been drawn.

ly. If this had been distributed as dividends, Young's additional taxes for these years would have been in the respective amounts of $33,363, $24,117, and $10,788.

We agree that under these circumstances an accumulation of a surplus in excess of $300,000 without payment of even a salary to the principal officer and, in effect, sole stockholder, *prima facie* calls for an explanation. However, taxpayer had one. General Motors had reserved the right to demand that taxpayer make substantial enlargement of its facilities, or improvements thereto, at any time—a very substantial right in view of the fact that its franchise was terminable at will. Also, taxpayer asserted that it was prudent to reserve further funds in case of increased demands by its purchasers for financing, and that, because of the highly competitive nature of the automobile business, it was necessary to maintain a fluid position. Taxpayer claimed the latter to be especially important since, if it should lose its franchise, it might have to incur large expenses in order to acquire another. While the need for more purchasers' financing may be debatable, the remaining matters are less so. Taxpayer had not enlarged its quarters since 1937. As early as 1945 General Motors had spoken of the necessity of further enlargement. In 1948 it began talking in terms of cancellation of franchise if its demands were not acceded to. In that year taxpayer endeavored, unsuccessfully, to purchase for $115,000 a piece of real estate on which to erect a new showroom and service station. It estimated construction costs to be an additional $150,-000. General Motors indicated that a building of even that size would be unacceptable. Thereafter, during the tax years, the Korean War made construction difficult, if not impossible. Also, because General Motors could not supply many cars, it was in no position to demand a substantial capital outlay. Taxpayer, however, regarded this as merely a temporary postponement. And, in fact, in 1953, General Motors announced that unless taxpayer would invest $500,000 in a new building its franchise would be terminated. Taxpayer felt this expenditure excessive, and refused. As a result, cancellation occurred, and for two years taxpayer was without a franchise. In 1956 it obtained a new manufacturer, but this required capital of $400,000 (causing taxpayer to recall its aforementioned loans).

In spite of this strong showing, the Tax Court held that the burden of proof was on the taxpayer on all issues except the reasonable needs of the business, that this latter was simply a subsidiary matter which need not be considered, and that on the ultimate question taxpayer had not overcome the presumption of correctness of the commissioner's determination that the accumulation was to avoid taxation upon the shareholders.

Taxpayer's position is succinctly stated in its brief. It "recognizes that the failure to pay dividends from the time the corporation had been formed, the investment of assets of the corporation in unrelated securities, the making of personal loans and the failure to charge interest on said loans, the failure of the president to draw a salary or the charging of a rental which could be described as 'unduly low' constituted factors which can be considered when determining the question of whether or not the prohibited purpose existed. The petitioner, however, submits that these factors must be considered in connection with the question of whether or not the accumulation was beyond the reasonable needs of the business, and that it is not proper to eliminate said issue and then, by riveting attention upon these factors, to infer that, because they in fact existed, there was a violation of the statute."

Taxpayer's point is well taken. It is entirely illogical to say that since reasonable business needs of the taxpayer is only a subsidiary, and not the determinative issue in the case, it is proper to disregard it and look simply at the rest of the record. While the ultimate question here is not the reasonable needs of the business, the answer to that ques-

tion may well be the single most important consideration in concluding whether taxpayer acted with a proper purpose in mind, or the proscribed one. Cf. United States v. R. C. Tway Coal Sales Co., 6 Cir., 1935, 75 F.2d 336, 337; United Business Corp. of America v. Commissioner, 2 Cir., 1933, 62 F.2d 754, 755. Just as absence of a reasonable business need for the accumulation is "determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary," [3] so the existence of an actual business need may be the strongest supporting evidence that taxpayer was motivated by a proper purpose. To by-pass that subsidiary question and then in deciding the case to say that taxpayer has failed on the ultimate issue is like saying that we will overlook any question of self defense and then conclude that on the rest of the record a finding of deliberate homicide is justified. No proper appraisal of a taxpayer's purpose can be made without considering all relevant factors.[4] The more particularly is this so when the court proceeds upon the theory that the commissioner's finding against taxpayer is to be presumed correct, and that the burden is upon taxpayer to overcome it.

■ The Tax Court may have been led into this error by a misconception of the precise issue. In its opinion it referred to preventing the imposition of the surtax upon stockholders as "one" of taxpayer's purposes, and stated, "If this purpose exists it may be accompanied by other legitimate business objectives and still the statute will apply." The court discussed at some length that taxpayer, being controlled by Young, must be taken to have known that declaring dividends would increase Young's surtaxes—a proposition scarcely requiring argument. If knowledge of such a result is to be the test of purpose, then the only corporations that could safely accumulate income would be those having stockholders with substantial net losses. The statute does not say "a" purpose, but "the" purpose. The issue is not what are the necessary, and to that extent contemplated consequences of the accumulation, but what was the primary or dominant purpose which led to the decision. Cf. Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218. The Tax Court's test was altogether too favorable to the government.

The taxpayer asks us to reverse outright because the stipulated facts show as matter of law that it was within reason to have made this accumulation. Even if we were to agree that the record so indicates, such a finding would not establish that such circumstance was in fact the actuating motive. There may have been others. The ultimate question is not whether the accumulation could be justified as a reasonable business decision, but whether taxpayer's actual

3. Int.Rev.Code of 1939, § 102(c), essentially re-enacted by the 1954 Code, § 533(a), 26 U.S.C. § 533(a). The re-enactment of this section tends to minimize the emphasis on reasonable business needs which is reflected in the legislative history leading to the enactment of section 534(a) which, in certain instances, places the burden of proving lack of business need upon the commissioner. Some of the discussion, standing alone, might indicate that Congress felt that the incidence of the tax should be determined solely by the objective reasonableness or lack of reasonableness of the accumulation. See S.Rep. No. 1622, 83d Cong., 2d Sess., pp. 70, 72, 315 (1954); H.Rep. No. 1337, 83d Cong., 2d Sess. p. 52 (1954); H.Rep. No. 2543 (Conference Report), 83d Cong., 2d Sess., p. 49 (1954); 100 Cong.Rec. 3425, 3437, 8983 (1954), U.S.Code Cong. and Adm.News 1954, pp. 4025 et seq., 4629 et seq., 5280 et seq. However, we think section 102 (a), now section 532, must still be regarded as directed at the taxpayer's actual intent.

4. To the extent that Pelton Steel Casting Co., 1957, 28 T.C. 153, affirmed, 7 Cir., 1958, 251 F.2d 278, certiorari denied 356 U.S. 958, 78 S.Ct. 995, 2 L.Ed.2d 1066, supports the present reasoning of the Tax Court, we expressly disapprove it.

dominant purpose was that defined in section 102(a). This is for the trier of facts.

.Judgment will be entered reversing the decision of the Tax Court and remanding the action for further proceedings not inconsistent herewith.