BARROW MANUFACTURING COMPANY, Inc., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 18652.

United States Court of Appeals
Fifth Circuit.

Aug. 24, 1961.

William R. Frazier, Hill & Frazier, James P. Hill, Jacksonville, Fla., for petitioner.

Charles B. E. Freeman, Atty., Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., I. Henry Kutz, Richard J. Heiman, Lee A. Jackson, Attys., Dept. of Justice, Hart H. Spiegel, Chief Counsel, Claude R. Marshall, Sp. Atty., I. R. S., Washington, D. C., for respondent.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

The Commissioner determined that the petitioner was subject to surtax provided by Section 102 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 102, for the taxable years ended June 30, 1951, 1952 and 1953, as follows:

Year Ended 6/30/51.........$17,119.44
Year Ended 6/30/52......... 12,333.20
Year Ended 6/30/53.........19,276.06
          Totals...........$48,728.70

The Tax Court sustained the Commissioner's determination. In its "Memorandum Findings of Fact and Opinion" comprising 28 pages of the printed record,[1] the Tax Court concluded that the petitioner, in each of the years in question, permitted its earnings to accumulate beyond the reasonable needs of the business, and that petitioner was availed of for the purpose of preventing the imposition of the surtax upon its shareholders.

After a careful examination and study of the record and the pertinent authorities, we find ourselves in agreement with the findings, opinion and holding of the Tax Court. The material evidentiary facts found by the Tax Court are without dispute; indeed, most of them were stipulated. They are fully stated in the findings of the Tax Court and a brief summary here will suffice.

The petitioner is a Georgia corporation chartered in 1931 with a capital stock of $10,000.00. During the fiscal years in question the capital stock was owned by members of the family of the founder, with the exception of one share owned by a nonrelative. The petitioner is engaged in the garment manufacturing business, primarily producing sportswear, work clothing, pants, and shirts for wholesale trade. Financial statements of the petitioner, found in the opinion of the Tax Court, portray steady growth from the charter date through the taxable years in question. Sales have increased from approximately $61,000 in 1932 to $2,100,000 in 1953, with profits after taxes averaging approximately 5% of sales. In only three years during this period did dividends ever average more than 10% of profits after taxes, and consequently the earned surplus of Barrow increased from $1,924.76 to $726,718.01. It was the business philosophy of W. H. Jennings, Sr., the petitioner's founder and president from its inception until February 15, 1949, one month prior to his death, to finance all growth in the business with retained earnings and to maintain as liquid and independent financial position as possible, a policy maintained by his son who succeeded him as president through the years in question. Consequently, petitioner had no permanent debt structure and paid for purchased material within 10 days to qualify for discounts. The petitioner's receivables were payable in 30 days in accordance with the standard of many years in the industry, and the bad debts claimed as tax deductions during the years in question were extremely low. The ratio of current assets to liabilities as of June 30 in each of the years in question was 10:1 in 1951, 9:1 in 1952, and 5.4:1 in 1953. The business of the petitioner is subject to a large volume turnover, sizable seasonal fluctuations peaking in March and September, and stiff competitive conditions.

■ Treasury Regulations 118 (1939 Code) Sec. 39.102–1(c) lists among other things which might be considered as circumstantial evidence of the purpose to avoid surtax "the investment by the corporation of undistributed earnings in assets having no reasonable connection with the business." Accordingly, the Commissioner laid emphasis on the investing of $50,000 in United States Savings Bonds from November 1946 through the years in question, and $100,000 in shares of twenty different Federal Savings & Loan Associations from February 1949 through the years in question. The petitioner insists that those investments were intended to accumulate a fund for the construction of a new factory building. On this point we agree with the Tax Court's opinion:

> "We have no doubt, after examining the directors' minutes, and upon consideration of the testimony of W. H. Jennings, Jr., that petitioner had in mind some such generalized plan. Moreover, petitioner, in 1950, bought the adjoining property

[1]. Unofficially reported in 19 TCM 195.

for the modest sum of $2,500, intending to use the land as part of the situs of the future plant together with the property it already owned. Nevertheless, the plan was quite general, not only as to the type of plant, but also as to the time of implementation, which was quite indefinite, and not within the reasonably calculable future. At the time of trial (April 1959), no steps toward implementation were begun or decided upon.

"It is our view that such a vague, generalized project, with no definite plan, and no substantial active move toward implementation, can not be taken to create a reasonable need of a business to accumulate 90 per cent or more of its earnings after taxes for at least three years and, as indicated in the record before us, an indefinite period thereafter. See Dixie, Inc., 31 T.C. 415, 429 (1958). (On appeal C.A. 2 [277 F.2d 526]); I. A. Dress Co., 32 T.C. 93, 102 (1959) aff'd [273] F.2d [543.] (C.A. 2, 1956). World Pub. Co. v. United States, [10 Cir.] 169 F.2d 186 (1948), certiorari denied 335 U.S. 911 [69 S.Ct. 480, 93 L.Ed. 443] (1949), rehearing denied 336 U.S. 915 [69 S.Ct. 601, 93 L.Ed. 1079] (1949)."

Clearly, there is substantial evidence to support this conclusion. For instance, W. H. Jennings, Jr. stated in the Tax Court his feelings about expansion when he took over in 1949:

"I determined not to undertake anything of a major nature until I and the other people responsible for the management of this business had more or less proven ourselves, and felt we could afford to risk going out and investing a lot of money in something of a major nature. * * * Among the uncertainties, of course, was the fact, the possibility that I and other of our key personnel might have been called into the service if

it, (the Korean War) had expanded into a major war, and there was certainly—it looked like it was going to there."

The minutes of the petitioner's Board of Director's Meeting for June 30, 1951 state: "Engineering our factory and putting up new buildings are both out of the question temporarily unless they are absolutely necessary and I do not consider them so, at least, until we can get more for our money." With the existence of such evidence in the record, we find ourselves unable to conclude that the findings of the Tax Court on this point are clearly erroneous. See 26 U.S.C.A. (I.R.C.1954) § 7482(a); Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ Relying on the decisions in J. L. Goodman Furniture Co. v. Commissioner, 11 T.C. 530, and F. E. Watkins Motor Co. v. Commissioner, 31 T.C. 288, the petitioner insists "that it is entitled to a sufficient amount of cash to cover one year's operating expenses and the total of its accounts receivable and inventories before being subjected to a Section 102 penalty." In Smoot Sand & Gravel Corporation v. C. I. R., 4 Cir., 1959, 274 F.2d 495, 499, it was found "that the nature of the operations was such as to require a working capital reserve 'for very much less than a full year'." We agree with the Second Circuit's treatment of a like contention in Dixie, Inc. v. C. I. R., 2 Cir., 1960, 277 F.2d 526, 528:

"The rule of thumb so stated may be one proper for administrative convenience but should rise to no higher level. The search must always be concerned with the needs of the particular business as they existed during the particular year. KOMA, Inc. v. Commissioner, 10 Cir., 189 F.2d 390; World Pub. Co. v. United States, 10 Cir., 169 F.2d 186; Hemphill Schools, Inc. v. Commissioner, 9 Cir., 137 F.2d 961; Pelton Steel Casting Co. v. Commissioner, 7 Cir., 251 F.2d 278."

With petitioner a rapid turnover of inventory and quick and almost certain[2] collection of accounts provided most of the operating funds.

We have not overlooked the petitioner's arguments of other reasonable needs of its business to justify the accumulation of such a large surplus. As to each, however, we are of the opinion that we cannot set aside the findings of the Tax Court as clearly erroneous.

■ The petitioner urges that the Tax Court may not have put the burden of proof on the Commissioner, in accordance with Section 534 of the 1954 Internal Revenue Code, 26 U.S.C.A. § 534, to establish that the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business. The Tax Court's opinion stated:

> "We have assumed, arguendo, throughout our discussion, that the burden of proof lay with the respondent. Our conclusions, however, are based upon and supported by the affirmative facts in the record, so that the burden of proof on the issue is not a significant factor."

Under the circumstances, the Tax Court's failure explicitly to impose the burden of proof on the Commissioner does not constitute reversible error. See Smoot Sand & Gravel Corporation v. C. I. R., supra, 274 F.2d 495, 504.

■ The Tax Court found, in the language of the statute, that petitioner was availed of "for the purpose of preventing the imposition of the surtax upon its shareholders." There was no error in failing to go further and find that that was the primary or dominant purpose of the accumulation. See Young Motor Co. v. Commissioner, 1960, 1 Cir., 281 F.2d 488, 491. Compare Kerr-Cochran, Inc. v. Commissioner, 8 Cir., 1958, 253 F.2d 121, 123. Judge Learned Hand has called attention that this statute "stands on the footing of the participants' state of mind," viz., "the *purpose* of preventing the imposition of the sur-

tax upon its stockholders," and that it "may need the support of presumption, indeed be practically unenforceable without it, * * *" United Business Corporation v. Commissioner, 2 Cir., 1933, 62 F.2d 754, 755. The utility of the badly needed presumption arising from the accumulation of earnings or profits beyond the reasonable needs of the business is well nigh destroyed if that presumption in turn is saddled with requirement of proof of "the primary or dominant purpose" of the accumulation.

The full opinion of the Tax Court makes further discussion unnecessary and undesirable. The decision is

Affirmed.

2. Bad debt losses during the three tax years totaled only $2,553.92.