Young Motor Company, Inc. v. Commissioner.
Young Motor Co. v. Commissioner
Docket No. 62101.
United States Tax Court
T.C. Memo 1962-135; 1962 Tax Ct. Memo LEXIS 179; 21 T.C.M. (CCH) 711; T.C.M. (RIA) 62135; May 31, 1962
Charles V. Ryan, Esq., 31 Elm St., Springfield, Mass., for the petitioner. James E. Markham, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding is before us on mandate from the United States Court of Appeals for the First Circuit issued pursuant to the Court's opinion in Young Motor Company v. Commissioner, 281 F. 2d 488 (C.A. 1, 1960), reversing 32 T.C. 1336 (1959). We there held that the petitioner had not borne the burden of proving error in respondent's determination that it was availed of to prevent the imposition of surtax on its stockholders by permitting earnings to accumulate instead of being distributed as dividends and was, therefore, subject to section 102 (I.R.C. 1939) surtax for the calendar years 1950, 1951, and 1952. The appellate court has instructed us to determine more precisely the "actuating" motive for the accumulation. The Court said: * * * The ultimate question is not whether the accumulation could be justified as a reasonable business decision, but whether taxpayer's actual dominant purpose was that defined in section 102(a). This is for the trier of *181 facts. Young Motor Company v. Commissioner, supra, 281 F. 2d at 491-492. In order to afford the parties an opportunity to present additional evidence bearing on the questions raised in the opinion of the appellate court, a further hearing was held. Based on the record as a whole and in addition to the evidentiary facts previously found (32 T.C. 1336-1343), which we now reiterate, we make the following: Supplemental Findings of Fact Petitioner's accumulation of earnings and profits during the taxable years 1950, 1951, and 1952 was not in excess of the reasonable needs of the business. Petitioner's directors never took any action in regard to, nor did they even discuss at any time, the declaration of a dividend on petitioner's stock. Petitioner's president and principal stockholder, Harry W. Young, did not know of the section 102 surtax on undistributed corporate earnings until he was told of it by an examining revenue agent in 1953. Young testified at the earlier hearing, and we so found in our original findings, that he leased certain real estate to petitioner at rentals amounting to $350 or $375 per month in 1950, which were increased to $750 *182 per month in 1951 or 1952. At the hearing on remand, Young testified that these gross rentals amounted to $9,600 in 1950 and $12,000 in 1951 and 1952. The original finding is revised accordingly. The last paragraph of our previous findings of fact, reading, "Petitioner was availed of during 1950, 1951 and 1952 to prevent the imposition of the surtax upon its share holders by permitting earnings or profits to accumulate instead of being distributed," is stricken. Opinion We have made a finding that the accumulations during the years in question were not beyond the reasonable needs of the business. This is based not on petitioner's affirmative evidence but on our conclusion that under the statute [1] the burden of proof was placed [2] on respondent, and that since the evidence is in virtual equipoise, the respondent has not sustained that burden. Nathan Cohen, 7 T.C. 1002 (1946). *183 We came to our previous conclusion while "[assuming] in its [petitioner's] favor that the evidentiary [3] element of business need has not been rebutted by respondent because of the statement furnished by petitioner" under section 534 of the 1954 Code. We made this as an assumption rather than a finding because of an effort to comply with the judicial principle of avoiding dicta and not deciding questions which, however disposed of, would not change the result. But we now find the fact affirmatively to avoid all ambiguity. It is true that there was no plan for accumulating any amount for the purpose for which it was finally expended, Barrow Manufacturing Company v. Commissioner, 294 F. 2d 79 (C.A. 5, 1961); cf. Breitfeller Sales, Inc., 28 T.C. 1164 (1957), that the alleged concept existing in 1950-1952 was abandoned in 1954, and that the directors never considered the question nor made any determination in advance as to the amount or purpose for which the accumulations would be required. See Smoot Sand & Gravel Corporation v. Commissioner, 274 F. 2d 495 (C.A. *184 4, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 362 U.S. 976 (1960), rehearing denied 363 U.S. 832 (1960). It is also true that section 537 of the 1954 Code, relied on by petitioner, [4] is not made applicable to the years before us, and even if it were, "[it] would not apply where the future plans are vague and indefinite, or where execution of the plans is postponed indefinitely." S. Rept. No. 1622, 83rd Cong., 2d Sess., p. 69 (1954). But with the burden placed where it is, we have given petitioner the benefit of all doubts and conclude that these considerations are not sufficient to overcome the statutory presumption in petitioner's favor in this limited area of the controversy. The language in our original opinion may have been less precise than was warranted when we said that the provisions respecting the presumption [5] as to "reasonable needs" had merely become neutral. This was not intended to mean that the reasonable needs of the business *185 or the relation of accumulations thereto were not to be examined, or that they were not actually considered, in the ultimate determination at which the statute is directed; namely, whether the purpose of the failure to distribute was that of avoiding tax on the shareholders. All that was meant was that, there being no accumulations beyond the reasonable needs of the business, the presumption in respondent's favor ceased to exist and that subsection then became neutral, or perhaps more precisely stated, inoperative. [6] We considered that the presumption with respect to reasonable needs is not like that in other provisions, such as the one covering contemplation of death where the statute expressly calls for the presumption to be applied in both directions; [7] and that, as far as section 102(b) of the 1939 Code is concerned, the presumption would take effect only in respondent's favor, see Chicago Stock Yards Co. v. Commissioner, 129 F. 2d 937 (C.A. 1, 1942), reversed sub nom. Helvering v. Stock Yards Co., 318 U.S. 693 (1943), and then only if the accumulations were beyond the reasonable needs of the business. We thought that there would then be no presumption *186 in favor of either respondent or petitioner arising from this aspect of the record. *187 Petitioner construes respondent's determination - as do we - as being composed of "two findings of fact: (1) an unreasonable accumulation; (2) the prohibited purpose." We viewed the deficiency as hence being based "in part on the allegation that * * * any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business." [8] As to that "allegation," [9] we have made the dispositive finding. But needs of the business and their relation to the size of the accumulations were also considered in our original determination, and have again been considered here as a factor dealing with the remaining, or ultimate, issue. That ultimate issue, and the only one upon which final judgment can be rested, is the purpose for which the corporate earnings were accumulated. [10]
*188 We have found, for the reasons stated, that the accumulations were not "beyond the reasonable needs of the business." This is the statutory language. We have not found that the earnings were accumulated "for" the reasonable needs of the business, as petitioner requests us to do. That expression of causation, relevant as it might be to indicate an existing and possibly dominant purpose inconsistent with that proscribed by section 102, is one which, on this record, we cannot conscientiously make. We have found as a fact, based on his testimony, that Young, petitioner's president and principal stockholder, was unaware of the provisions of section 102. But this seems to us totally irrelevant. We have no doubt, and there is nowhere any evidence denying, that he was well aware of the individual income tax, of the effect on the tax due if dividends were declared, and of the consequent tax advantage to himself and his wife of not causing petitioner to declare any. [11] When he was asked whether a distribution to him would not have accomplished the purpose of conserving the business assets as well as the failure to distribute, his answer was, in effect, that had the earnings been distributed *189 he would have felt free to spend them, with the result that in later years the assets would not have been available for further use. [12] We have affirmatively refrained from making any finding that this was, in fact, the reason for petitioner's action or for the participation of petitioner's principal stockholder therein. *190 The explanation advanced in petitioner's brief [13] is that had the earnings been distributed and had the individual income tax thereon been paid, there would then have been a smaller net sum available to petitioner's stockholders by means of which any future financing could have been accomplished. In view of the conclusion we reach by reason of our interpretation of the present mandate, it is unnecessary to speculate as to what would have been the consequence had petitioner's controlling stockholders secured the benefit of the *191 distribution of its earnings by way of dividends. We do not understand the Court to say, however, by that part of its opinion, [14] that the imposition of the income tax upon the stockholders, with its consequent diminution of their resources, would by itself, and without more, be adequate to justify the accumulation of earnings by a corporation in order to avoid the imposition of the section 102 tax. As we said in Latchis Theatres of Keene, Inc., 19 T.C. 1054, 1065 (1953), affd. 214 F. 2d 834 (C.A. 1, 1954): * * * The only disadvantage that this record shows in such a procedure [distributing the earnings of the petitioners to their stockholders so that those individuals could use the funds] is that it would have subjected the stockholders to additional taxes, the very result which section 102 was designed to promote. Helvering v. Chicago Stock Yards Co., 318 U.S. 693. Young testified that the reason for the accumulations was to provide the business with funds for anticipated use in petitioner's operations. But we have in other cases viewed this type of testimony against the background of all the surrounding *192 circumstances, and as we said [15] in Pelton Steel Casting Co., 28 T.C. 153, 173-174 (1957), affd. 251 F. 2d 278 (C.A. 7, 1958), certiorari denied 356 U.S. 958 (1958): * * * Of course, the corporation's intent will be considered to be that of those responsible for its acts. * * * In this regard, while the testimony of petitioner's officers and shareholders is entitled to some weight, the issue is to be resolved in the light of all of the surrounding circumstances, including, of course, the interests of those in control, and their actual conduct. While we have found that the accumulations were not beyond the reasonable needs of the business for the reasons already set forth, it seems to us not inappropriate, in determining the purpose of the accumulation, to take into consideration what was actually done with the earnings that were not distributed. These were not retained in the business, nor, for the most part, used by it to make investments which would readily produce cash if needed and return at least some income to petitioner in the meantime. The bulk of the earings was used for making loans to Young *193 and his unrelated business enterprises without interest and with no evidence in this record that they could have been converted into cash when and if petitioner's need for funds should arise. [16] The reasonable needs of petitioner's business might hence have equalled the amount of its earnings which were not distributed, but there is no showing that these business needs were met by the manner in which petitioner treated the accumulation, nor that they were the reason for it. *194 In our prior opinion we took the position that while respondent had not borne the burden of proving that petitioner's accumulation of earnings was not in excess of the reasonable needs of the business, petitioner had likewise failed to produce proof to overcome the presumptive correctness of the Commissioner's determination that the purpose of failure to distribute the earnings was to avoid surtax on the shareholders. It is to this latter aspect of the case that the appellate court's mandate is directed. As we construe the Court's opinion on mandate it rejects what might be termed the dual burden of proof concept on which our opinion was grounded; that is, that prima facie correctness attaches, independently, both to the Commissioner's determination that the accumulation was in excess of the reasonable needs of the business and that it was for the purpose of avoiding surtax on the shareholders. On this point, we relied chiefly on Pelton Steel Casting Co., supra.
We read the opinion on remand, although it is not entirely clear on this point, as directing us, once there has been a shift to the Commissioner of the burden of proof with respect to the reasonableness of *195 the accumulation, to regard the burden of proof with respect to the purpose of the accumulation as likewise having shifted to him. The Court in a footnote expressed disagreement with the Pelton Steel case to the extent that it "supports the present reasoning of the Tax Court." On the general subject of petitioner's purpose for failing to distribute, we said (at 1344): * * * The statute also calls for the existence of the inhibited purpose. If this purpose exists it may be accompanied by other legitimate business objectives and still the statute will apply. * * * [We] think, on the present record * * * that petitioner has failed to carry its burden of showing that one of the purposes of maintaining its relatively large corporate surplus was not to prevent the imposition of surtax upon Young and his wife by means of accumulating its earnings. In stating this general principle we relied upon cases previously decided, including an opinion of the Court of Appeals for the First Circuit, even though that was reversed in respondent's favor in one of the authorities cited. In the First Circuit's opinion in Chicago Stock Yards Co. v. Commissioner, supra, 129 F. 2d at 947-948, *196 Judge Magruder stated the test to be as follows: * * * It has been held that the tax under § 104 [Revenue Act of 1928, the predecessor of section 102 of the 1939 Code] cannot be avoided unless the corporation succeeds in establishing that the purpose of the accumulation was "wholly other than that of preventing surtax upon its shareholders - not only that there was another purpose, but that there was a complete absence of the disapproved purpose." * * * Perhaps this is too strong a statement; but at least it is clear that § 104 would apply if in the totality of reasons which induced the continuing of the accumulation the forbidden motive of surtax avoidance played a substantial part. Since the Revenue Act of 1928, as to which this statement was made of the test applicable to excessive accumulations, the provision has been re-enacted something like five times without material change in the language dealing with "purpose." [17]
*197 But the law of this case now is that our statement of the criteria was in error. The Court of Appeals, in reviewing the present case, states (at 491): The Tax Court may have been led into this error by a misconception of the precise issue. In its opinion it referred to preventing the imposition of the surtax upon stockholders as "one" of taxpayer's purposes, and stated, "If this purpose exists it may be accompanied by other legitimate business objectives and still the statute will apply." * * * The statute does not say "a" purpose, but "the" purpose. The issue is * * * what was the primary or dominant purpose which led to the decision. Cf. Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278 * * *. The Tax Court's test was altogether too favorable to the government. Placing the burden of proof of "purpose" upon respondent, as we now do by reason of the law of the case as stated in the opinion on review, and for the same reason defining that "purpose" as being required to be the dominant one, we conclude that respondent has not carried his burden here by a preponderance of the evidence; and for that reason and without reaching any conclusion which will *198 be binding in the future in other cases, we find, accordingly, as an ultimate fact, that petitioner was not formed or availed of in the years before us for the dominant purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation through the medium of permitting earnings or profits to accumulate instead of being divided or distributed. Decision will be entered for the petitioner. Footnotes
1. Sec. 534, I.R.C. 1954, made applicable here by section 534(e)↩. 2. SEC. 534. [I.R.C. 1954] BURDEN OF PROOF. (a) General Rule. - In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall - (1) if notification has not been sent in accordance with subsection (b), be on the Secretary or his delegate, or (2) if the taxpayer has submitted the statement described in subsection (c), be on the Secretary or his delegate with respect to the grounds set forth in such statement in accordance with the provisions of such subsection. [Italics added.]↩
3. The statutory description is: "Evidence Determinative of Purpose."↩
4. SEC. 537. REASONABLE NEEDS OF THE BUSINESS. For purposes of this part, the term "reasonable needs of the business" includes the reasonably anticipated needs of the business.↩
5. SEC. 102. [I.R.C. 1939] SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. * * *
(c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.↩
6. We there said, for example: "* * * If there is no proof by respondent of the unreasonableness of the accumulation as regards business needs and there is no other evidence, petitioner must still fail because the burden of proof of facts sufficient to show the error of respondent's determination is basically upon it as in all comparable proceedings." Young Motor Co., 32 T.C. 1336, 1344↩ (1959); italics added. 7. SEC. 2035. [I.R.C. 1954] TRANSACTIONS IN CONTEMPLATION OF DEATH. * * *
(b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death * * * transferred an interest in property * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death * * *; but no such transfer * * * made before such 3-year period shall be treated as having been made in contemplation of death.↩
8. See footnote 2. ↩
9. See footnote 2. ↩
10. SEC. 102. [I.R.C. 1939] SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition of Tax. - There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation * * * if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax * * *↩
11. For purposes of this case, we cannot regard this as any evidence of the inhibited purpose, in view of the statement in the opinion on remand, "* * * The [Tax] Court discussed at some length that taxpayer, being controlled by Young, must be taken to have known that declaring dividends would increase Young's surtaxes - a proposition scarcely requiring argument. If knowledge of such a result is to be the test of purpose, then the only corporations that could safely accumulate income would be those having stockholders with substantial net losses." Young Motor Company v. Commissioner, 281 F. 2d 488, 491 (C.A. 1, 1960), reversing 32 T.C. 1336↩ (1959). 12. Young was asked: "* * * Now if the earnings had been distributed in dividends who would have gotten them in these years of 1950, 1951 and 1952? THE WITNESS: The stockholders. THE COURT: Well, primarily who would that be? THE WITNESS: The stockholders were myself, my wife and Mr. Frank. THE COURT: As far as you and your wife were concerned did it make any difference to the Young Motor Company business whether you had the money or whether it was a loan to these enterprises, as far as using it for the Young Motor Company is concerned? THE WITNESS: Well, if we borrowed the money and we needed it back we could return it at any time we needed it. THE COURT: What I am saying is wouldn't the same thing have been true if instead of borrowing it you had gotten the money by declaring a dividend? THE WITNESS: No, because if I had a dividend I would have taken it out and spent it whereas if it was a loan from the company I was mighty careful that we did not get involved so that we could return it."↩
13. "The witness replied that it would not be the same as he would have spent it and it would thus not be available to the corporation if the money had been distributed as dividends. "Whether the witness's reasoning as to why it would not be the same was sound is unimportant. There can be no doubt that if the earnings had been distributed as dividends, the stockholders would never have been in a position to return all of said earnings to the petitioner. * * * "In other words, out of the $109,038 earned by the petitioner after taxes in said three years the Youngs would have given $68,268 to the Federal Government in additional income taxes * * *"↩
14. See footnote 11, supra.↩
15. But see footnote 11, supra.↩
16. For example, Young was asked: "* * * Supposing the Young Motor Company the petitioner here had needed these funds that were represented by the loans, how would it have been able to get them? THE WITNESS: We would pay them back any time they needed the money. THE COURT: You had the assets in these other businesses that were necessary to pay these notes on demand? THE WITNESS: I had a line of credit in the bank where we could borrow money if we needed it and I could always go and get it and pay any loan back that we might owe. * * *
THE COURT: * * * What I asked you was whether that wouldn't be true if instead of lending the money to these other enterprises you distributed the money in dividends? Wouldn't it still have been true that you would have had that line of credit? THE WITNESS: I had a line of credit because regardless of any business of any shape or form or dividends on here I had a line of credit because I always kept up the obligations at the bank and when they were due I took care of it not only at the bank, at that bank but in one or two banks."↩
17. The Court of Appeals for the Second Circuit, in construing the Revenue Act of 1932, also said: Nor can we subscribe to the view that the prevention of the imposition of surtaxes must have been shown to have been the dominant factor behind the accumulations. Though the facts here, of course, differ from those in the Chicago Stock Yards Company case the following language of Mr. Justice Roberts applies here too: "A corporate practice adopted for mere convenience or other reasons, and without tax significance when adopted, may have been continued with the additional motive of avoiding surtax on the stockholders. The Board's conclusion may justifiably have been reached in the view that, whatever the motive when the practice of accumulation was adopted, the purpose of avoiding surtax induced, or aided in inducing, the continuance of the practice." Trico Products Corp. v. Commissioner, 137 F. 2d 424, 426 (C.A. 2, 1943), affirming 46 B.T.A. 346 (1942), certiorari denied 320 U.S. 799↩ (1943).