Phillip B. HARDIN, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

HARDIN'S BAKERIES CORPORATION,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee
(two cases).

Nos. 71-1049, 71-1405, 71-1406
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 7, 1972.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F. 2d 409, Part I.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., Dept. of Justice, Washington, D. C., Leonard J. Henzke, Jr., Harry Baum, Gary R. Allen, Attys., Tax Division, Department of Justice, Washington, D. C., for the United States.

James P. Knight, Jr., Jackson, Miss., Roland J. Mestayer, Jr., Ward, Mestayer & Knight, Pascagoula, Miss., for Hardin and others.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this consolidated appeal of three Federal income tax refund suits the score thus far stands 2–1 in favor of the Government. The opposing line-up consists of Phillip B. Hardin (Taxpayer) and two of his wholly owned corporations manufacturing bread and other bakery

products in Mississippi.[1] Both corporations were thrown out in a double play when the District Court concluded that they had retained earnings and profits in amounts exceeding their reasonable business needs for the purpose of income tax avoidance and were therefore subject to the accumulated earnings tax imposed by Subchapter G of the Internal Revenue Code of 1954.[2] Taxpayer averted a shut-out when the Court held that certain payments made by Hardin's Bakeries Corp. to Taxpayer's sister-in-law, while not deductible by the corporation as an ordinary and necessary business expense, were nevertheless also not includable in his gross income as informal or "constructive" dividends. Both sides seek an instant appellate replay.

The replay shows the Government should sweep the series. We affirm the judgments for the United States because the issues contested by the corporate taxpayers involve essentially factual questions resolved adversely by the District Court on the basis of findings that are not clearly erroneous. We reverse the judgment in favor of Taxpayer because on virtually any theory of the case the corporate payments made at his direction to his deceased brother's wife constituted taxable income to him.

*The Corporations (71–1405 and 71–1406)*

Both Hardin's Bakeries Corp. and Hardin's Bakeries, Inc. operate wholesale bakery businesses in northern Mississippi. Evolving from a family partnership consisting of Taxpayer and his brothers and sisters, the corporations are exclusively controlled by Taxpayer, who owns all of the capital stock and is the chief executive officer of each firm. During the taxable years in question (1964 and 1965) most of the day-to-day operations of both businesses were carried on by a committee because of Taxpayer's illness, although he continued to supervise and approve most of the major decisions involving capital expenditures.

During this period both corporations accumulated substantial earned surpluses, consisting mostly of cash and other liquid assets, of which a substantial proportion was available for utilization as working capital or for the payment of

---

1. The Government chose not to appeal from a judgment in favor of a third corporation, Hardin's Bakeries Management Corp.

2. "Sec. 531. *Imposition of accumulated earnings tax.*

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of—

(1) 27½ percent of the accumulated taxable income not in excess of $100,000, plus

(2) 38½ percent of the accumulated taxable income in excess of $100,000. *Sec. 532. Corporations subject to accumulated earnings tax.*

(a) *General rule.*—The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b)) formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed.

 \*      \*      \*      \*      \*

*Sec. 533. Evidence of purpose to avoid income tax.*

(a) *Unreasonable accumulation determinative of purpose.*—For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary.

 \*      \*      \*      \*      \*

*Sec. 537. Reasonable needs of the business.*

For purposes of this part, the term 'reasonable needs of the business' includes the reasonably anticipated needs of the business."

26 U.S.C.A. §§ 531–533, 537.

dividends.[3] However, neither corporation had *ever* declared a dividend since the reorganization of the family partnership in 1944–45, and had all available accumulated earnings (above the amount, as computed by the Government necessary for working capital) been paid out as dividends during 1964–65 Taxpayer's additional Federal income tax liability would have amounted to approximately $135,000.[4] On this basis the Commissioner determined that the retention of earnings by both corporations constituted an attempt to reduce Taxpayer's individual personal income tax liability, resulting in the assessment of the accumulated earnings tax.

In their suits for refund both corporations contended that they had reasonably anticipated working capital requirements exceeding their accumulated surpluses [5] and that the tax was not imposable, ei-

3. At the end of taxable years 1964 and 1965 the corporations had accumulated earned surpluses in the following amounts:

|  | 1964 | 1965 |
|---|---|---|
| Hardin's Bakeries Corp. | $1,223,826 | $1,282,501 |
| Hardin's Bakeries, Inc. | $ 814,125 | $ 828,507 |

The respective current assets and liabilities of each corporation during this period were as follows:

Hardin's Bakeries Corp.

|  | 1964 | 1965 |
|---|---|---|
| Current assets per return | $801,802 | $814,088 |
| Current liabilities per return | 35,998 | 35,292 |
| Current assets less current liabilities (amount available for working capital or dividends) | $765,804 | $778,796 |

Hardin's Bakeries, Inc.

|  | 1964 | 1965 |
|---|---|---|
| Current assets per return | $601,186 | $808,497 |
| Current liabilities per return | 64,981 | 65,345 |
| Current assets less current liabilities (amount available for working capital or dividends) | $536,205 | $743,152 |

4. The after-tax profits of the corporations were as follows:

|  | 1964 | 1965 |
|---|---|---|
| Hardin's Bakeries Corp. | $24,539.91 | $76,085.00 |
| Hardin's Bakeries, Inc. | $67,459.91 | $38,586.00 |

Had these profits been paid out as dividends, Taxpayer's Federal income tax liability for 1964 would have been increased by $61,318.78 and for 1965 by $73,993.07.

5. The corporations' claimed working capital needs, compared with available working capital, is shown by the following table:

| Alleged Needs | 1964 | | 1965 | |
|---|---|---|---|---|
|  | Corporation | Bakeries | Corporation | Bakeries |
| Three Months Operating Expenses | $ 614,100 | $296,095 | $ 787,823 | $199,093 |
| Capital Assets | 126,046 | 79,235 | 169,597 | 484,175 |
| Purchase Commitments | 83,667 | 79,012 | 115,519 | –0– |
| Reserve for Self-Insurance | 343,241 | 189,307 | 289,499 | 153,344 |
| TOTAL ALLEGED NEEDS | $1,167,054 | $643,649 | $1,362,438 | $836,612 |
| Working Capital Available | (765,804) | (536,205) | (778,796) | (743,152) |
| Alleged Deficiency | $ 401,250 | $107,444 | $ 583,642 | $ 93,460 |

ther because the accumulations in question were within their legitimate business needs or because the purpose for the accumulations was not the avoidance of Federal income taxes. Rejecting both of these arguments, the District Court found that there was no substantial evidence supporting the corporations' position regarding the purposes for the accumulations, that none of the amounts accumulated were actually expended for the alleged purposes advanced to justify them, and that their respective surpluses were unreasonable in amount when considered in connection with the reasonably anticipated capital requirements of the businesses.[6]

Significantly, the law does not require a finding that a corporation's earnings have been accumulated exclusively or primarily for the purpose of averting Federal income tax liabilities for its shareholders. It is sufficient if a tax avoidance motive was one of the underlying purposes. United States v. Donruss Co., 1969, 393 U.S. 297, 301, 89 S.Ct. 501, 503, 21 L.Ed.2d 495, 500; Barrow Mfg. Co. v. Commissioner, 5 Cir., 1961, 294 F.2d 79, 82, cert. denied, 1962, 369 U.S. 817, 82 S.Ct. 827, 7 L.Ed. 2d 783. Since § 533(a) of the Code provides that accumulations beyond reasonable business needs shall be determinative of a tax avoidance purpose "unless the corporation by the preponderance of the evidence shall prove to the contrary" (see note 2, supra), both corporations were in effect burdened with disproving an unacceptable motive if their retained earnings during the taxable years in question were in fact excessive. Mead's Bakery, Inc. v. Commissioner, 5 Cir., 1966, 364 F.2d 101.[7] Thus, the District Court's finding that the accumulations of both corporations exceeded their reasonable working capital, requirements is really the only issue seriously in dispute because the evidence advanced to establish legitimate motives, including that involving Taxpayer's conservative finan-

---

6. In estimating the corporations' working capital needs the District Court utilized the so-called "operating cycle method," which involves a computation of the amount of cash required to sustain the business through one complete cycle of (i) cash into raw materials, (ii) raw materials into an inventory of marketable products, (iii) inventory into sales and accounts receivable, and (iv) accounts receivable into cash. On the basis of this estimate the corporations had available the following amounts for distribution as dividends:

Hardin's Bakeries Corp.

|  | 1964 | 1965 |
|---|---|---|
| Amount available for working capital and/or dividends | $765,804 | $778,796 |
| Working capital requirement per operating cycle | $ 55,814 | $ 59,964 |
| Amount available for distribution as dividends | $709,990 | $718,832 |

Hardin's Bakeries, Inc.

|  | 1964 | 1965 |
|---|---|---|
| Amount available for working capital and/or dividends | $536,705 | $743,652 |
| Working capital requirement per operating cycle | $ 24,041 | $ 26,982 |
| Amount available for distribution as dividends | $512,664 | $716,670 |

---

7. Of course the evasive purpose penalized by § 532 may still be proven by circumstances other than an unreasonable accumulation of earnings. The substantial reduction of Taxpayer's personal Federal income tax liability and the fact that neither corporation had ever declared a dividend in twenty years of operation were two such circumstances which the District Court might properly have taken into account. Helvering v. Nat'l Grocery Co., 1938, 304 U.S. 282, 292–93, 58 S.Ct. 932, 937, 82 L.Ed. 1348, 1355; Treas. Reg. § 1.537–2(c).

cial policies and the losses resulting from a plant fire, falls far short of that requisite to overcome the inference of presumptive unacceptability entailed by excessive retention of earnings. Both corporations may very well have had a variety of legitimate, nontax motives—to some or all of which their financial policies may be attributed—but a concession of their existence does not mandate the conclusion that tax avoidance played no role in the matter. Absent clear error the District Court's finding of a proscribed purpose must stand. Battelstein Investment Co. v. United States, 5 Cir., 1971, 442 F.2d 87, 88; cf. Scroll, Inc. v. Commissioner, 5 Cir., 1971, 447 F.2d 612, 619–20.

Whether the District Court correctly concluded that earnings were accumulated beyond the reasonable business needs of the corporations depends almost entirely upon the validity of the evidentiary criteria that were utilized to assess "reasonableness," particularly the method by which the corporations' need for working capital was determined by reference to the amount required to carry them through one complete operating cycle.[8] Both corporations claim that the operating cycle approach substitutes an essentially arbitrary formula for analysis of specific business conditions necessitating capital reserves and that its application here has deprived them of the right to accumulate working capital for the purposes of (i) a self-insurance reserve, (ii) purchasing bakery ingredients for succeeding years, (iii) retiring outstanding indebtedness, and (iv) meeting operating expenses for a fixed period of time in the future. Liberally allocating a substantial amount of their retained earnings to each of these purposes, they conclude that their reasonable business needs actually exceeded their available working capital in each of the taxable years in question (see note 5, *supra*).

We need not decide generally whether the operating cycle calculation successfully urged by the Government is always necessarily preferable to any other method for determining a corporation's reasonable business needs. Whatever its merits in the abstract, the Government's approach to the problem here is infinitely superior to that urged as an alternative. The District Court was required to discover some means for determining the amount of working capital reasonably necessary to cover operating expenses for these two corporations, taking into account such factors as their rapid inventory turn-over, immediate and virtually complete collection on open accounts, record of past earnings and consistent yearly profits, the highly competitive character of the Mississippi bread market, and the relative stability of annual sales. Computing this amount on the basis of a 19-day operating cycle —that is, the amount of cash reasonably required for 19 days of operation—the Court determined that the earnings of both corporations had been unreasonably accumulated. On the other hand, both corporations argued in favor of accumulations sufficient to cover anticipated operating expenses for *three* months without ever suggesting any persuasive reason for the three-month period other than the fact that some previous court decisions had held operating reserves based upon even greater lengths of time to be inherently "reasonable."[9] Under such

8. This technique represents an attempt to avert the inflexibility and imprecision that results from seeking to define a "reasonable" accumulation in terms of anticipated operating expenses for a fixed period of time (e. g., one year), regardless of the nature of the business under consideration. Originally formulated in Bardahl Mnfg. Co. v. Commissioner, 1965, 24 T.C.M. 1030, the operating cycle approach has been sanctioned by both the Tax Court and the First Circuit. See Apollo Industries, Inc. v. Commissioner, 1 Cir., 1966, 358 F.2d 867; Magic Mart, Inc. v. Commissioner, 1969, 51 T.C. 775. Of course, it has no magic. It reflects sound business practices and judgments or else it is not helpful.

9. See, e. g., Sterling Distributors, Inc. v. United States, 5 Cir., 1963, 313 F.2d 803, 808, involving the Tax Court's pre-

circumstances the District Court might properly have concluded that the corporations' argument amounted to no more than an afterthought to justify challenged accumulations. Smoot Sand & Gravel Corp. v. Commissioner, 4 Cir., 1957, 241 F.2d 197, 202, cert. denied, 354 U.S. 922, 77 S.Ct. 1383, 1 L.Ed.2d 1437.

■ Similar flaws characterize the other reasons advanced to justify the necessity for retaining all earnings for working capital. For example, while a considerable portion of the plant value of both corporations was uninsured, neither established self-insurance reserves during the taxable years in question, and at best they can establish only that such reserves might have been necessitated in the event of some hypothetical disaster that might have entailed substantial plant replacement costs. In the absence of any evidence supporting the reasonableness of that hypothesis, neither corporation could have retained earnings merely for the purpose of providing for some theoretical contingency that might never have transpired. Bare possibilities do not amount to reasonable business needs. Smoot Sand & Gravel Corp. v. Commissioner, *supra*, 241 F.2d at 203; Motor Fuel Carriers, Inc. v. United States, N.D.Fla., 1962, 202 F.Supp. 497. The amounts allegedly required to fund the succeeding year's capital outlays (see note 5, *supra*) are grossly excessive when compared with amounts allocated to such expenditures on the corporations' returns for the taxable years in question. Similarly, the amounts supposedly required for the satisfaction of long-term commitments to purchase bakery ingredients were obviously taken into account by the Government's operating cycle computation, inasmuch as payment was made upon delivery out of profits earned after the purchase commitments were made.

■ In short, both corporations have simply failed to demonstrate clear error in the District Court's finding that no reasonable business necessity supported their accumulation of earnings. Given this failure we must affirm. Barrow Mfg. Co. v. Commissioner, *supra*, 294 F.2d at 81.

### The Payments to Taxpaper's Sister-in-law (71-1049 and 71-1405)

During 1964 and 1965 Hardin's Bakeries Corp. made two payments totaling $4,625 to Mrs. J. F. Hardin, the widow of Taxpayer's brother. J. F. Hardin had inherited an interest in the family bakery business which he sold to his brother several years before the partnership was incorporated, and although the evidence is sketchy we assume that he continued to act as an employee until his death in 1956. Neither brother nor wife owned stock in any of the Hardin corporations, and Taxpayer was under no statutory or contractual obligation to his sister-in-law. Rather, he allegedly felt that his corporation "owed something" to Mrs. Hardin because of her husband's past services on its behalf. Because the company had provided retirement pensions to several other employees or their families, it argues that the payments to Mrs. Hardin were made pursuant to an informal pension plan and were therefore deductible under § 404(a) and § 162 of the Code.[10]

---

*Bardahl* rule that accumulations to meet operating expenses for a period of one year are not unreasonable.

10. "Deduction for contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan.
    (a) *General rule.*—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) ; but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, * * *." 26 U.S.C.A. § 404(a).
    "Trade or business expenses.

■ Even if these two isolated payments, made many years after the death of Taxpayer's brother, could somehow be characterized as a deferred compensation or pension *plan* under § 404,[11] they still would not be deductible unless they also constituted an ordinary and necessary business expense under § 162. Treas.Reg. § 1.404(a)–12. We agree with the District Court that the payments were not shown to have been either ordinary or necessary to the conduct of the corporation's business—in fact, in view of their timing and sporadic character, they appear to have been highly unusual. Furthermore, given the recipient's relation by marriage to Taxpayer, we think it rather unlikely that they actually served the function of "promoting employee loyalty" that the corporation now postulates for them. The deduction was properly disallowed because of the corporation's failure to prove an entitlement to it. Interstate Transit Lines v. Commissioner, 1943, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607.

■ Finally, we reach the issue of whether the two payments, made by Taxpayer's closely held corporation at his direction, constituted a "constructive dividend" to him. Apparently the District Court was impressed by the fact that the directors of the corporation had never formally declared a dividend, by the circumstances that Taxpayer was under no legal obligation to support his sister-in-law, and by the evidence that neither J. F. Hardin nor his wife had ever owned stock in Hardin's Bakeries Corp. Of course, "whether or not a corporate distribution is a dividend or something else, such as a gift, compensation for services, repayment of a loan, interest on a loan, or payment for property purchased, presents a question of fact to be determined in each case." Lengsfield v. Commissioner, 5 Cir., 1957, 241 F.2d 508, 510. However, all the findings of fact which the Trial Court thought dictated a judgment for Taxpayer are actually perfectly consistent with the Government's theory, while one —which resulted in disallowing deduction of the payments as a corporate business expense—is virtually fatal to Taxpayer's position.

■ Generally, "any distribution of property by a corporation to its shareholders out of accumulated earnings and profits is a dividend taxable to the shareholders as ordinary income." Commissioner v. Gordon, 1968, 391 U.S. 83, 88–89, 88 S.Ct. 1517, 1520, 20 L.Ed.2d 448, 454. Whether or not a dividend has been formally declared is irrelevant. Sachs v. Commissioner, 8 Cir., 1960, 277 F.2d 879, 882; Paramount-Richards Theatres, Inc. v. Commissioner, 5 Cir., 1946, 153 F.2d 602, 604. Likewise, under the familiar doctrine of Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, "it is of little consequence that [Taxpayer] personally received no money from the transaction, for it is the power to dispose of income and the exercise of that power that determines whether taxable income has been received." Sammons v. United States, 5 Cir., 1970, 433 F.2d 728, 732; Floyd v. Scofield, 5 Cir., 1952, 193 F.2d 594, 596. The fact that Mrs. Hardin was not a shareholder of the corporation, and that the payments were not made in satisfaction of a legal obligation, means nothing if their only purpose was to satisfy what Taxpayer obviously felt to be a personal or moral responsibility for his sister-in-law's welfare rather than a legitimate business purpose.

(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business  *  *  *." 26 U.S.C.A. § 162.

11. Obviously the term "plan" connotes at least some sort of determinable arrangement or agreement between employer and employee, rather than sudden and unexpected largess. The conclusion that in reality the payments were not part of a plan "takes only an open-eyed reading of the record and a utilization of common sense." Trinity Construction Co. v. United States, 5 Cir., 1970, 424 F.2d 302, 306.

The District Court's disallowance of the deduction of the payments by the corporation as an ordinary and necessary business expense conclusively establishes that they served no conceivable corporate purpose. Absent such justification for them, the only alternative is that they were informal or "constructive" dividends, paid at Taxpayer's direction to a relation by marriage for reasons wholly personal to him. Such a distribution of corporate earnings for the benefit of a sole shareholder cannot go untaxed. Sammons v. United States, *supra*; Commissioner v. Makranky, 3 Cir., 1963, 321 F.2d 598.

The judgments in No. 71–1405 and No. 71–1406 are affirmed. The judgment in No. 71–1049 is reversed and remanded for entry of judgment in favor of the United States.