251 F.2d 839
 HEDBERG-FREIDHEIM CONTRACTING COMPANY, a corporation; Fred W. Hedberg and Chas. M. Freidheim, as Liquidating Trustees of Hedberg-Freidheim Contracting Company, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
HEDBERG-FREIDHEIM AND COMPANY, a corporation; Fred W. Hedberg and Chas. M. Freidheim, as Liquidating Trustees of Hedberg-Freidheim and Company, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 15846.
 No. 15847.
 United States Court of Appeals Eighth Circuit.
 February 6, 1958.
 
 O. A. Brecke, St. Paul, Minn., for petitioners.
 Morton K. Rothschild, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., were with him on the brief), for respondent.
 Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.
 GARDNER, Chief Judge.
 
 
 1
 This case comes to us from The Tax Court of the United States on petition of two corporate taxpayers, Hedberg-Freidheim and Company and Hedberg-Freidheim Contracting Company, to review a decision which determined that each permitted its earnings to accumulate beyond the reasonable needs of its business and was thus availed of for the purpose of preventing the imposition of surtax upon its shareholders, in violation of Section 102, Internal Revenue Code of 1939, 26 U.S.C.A. § 102.
 
 
 2
 The Tax Court in its decision referred to Hedberg-Freidheim and Company as Hedberg-Freidheim and to Hedberg-Freidheim Contracting Company as Contracting, as have counsel for the respective parties, and for the purpose of avoiding confusion we shall do likewise.
 
 
 3
 Taxpayer Hedberg-Freidheim is a corporation organized in 1922 with an outstanding capital stock of $28,200 represented by 282 shares and at all times here material Fred W. Hedberg was the owner of 140 shares and his wife, Dorothy E. Hedberg, was the owner of 1 share. Charles M. Freidheim was the owner of 140 shares and his wife, Grace E. Freidheim, was the owner of 1 share.
 
 
 4
 Taxpayer Contracting is a corporation organized in 1929 with an outstanding capital stock of $26,400 represented by 264 shares and at all times here material taxpayer Hedberg-Freidheim was the owner of 260 shares of this corporation, and one qualifying share of stock was held by each of the stockholders of Hedberg-Freidheim.
 
 
 5
 Taxpayer Hedberg-Freidheim was for the most part engaged in the business of excavating and selling sand and gravel and it also manufactured and sold concrete blocks, while Contracting was principally engaged in the business of transporting the products of Hedberg-Freidheim, having been organized for that purpose by the stockholders of Hedberg-Freidheim. Each of the taxpayer corporations kept its books and filed its returns for the taxable year on the basis of a fiscal year ending March 31st. The officers of both Hedberg-Freidheim and Contracting since 1929 have been Fred W. Hedberg, President, Grace E. Freidheim, First Vice-President, Dorothy, E. Hedberg, Second Vice-President, and Charles M. Freidheim, Secretary-Treasurer. These persons have also constituted the board of directors of each corporation since 1929. Mr. Hedberg was the manager of both corporations and spent substantially more time supervising them than did Mr. Freidheim who had outside real estate interests.
 
 
 6
 As to taxpayer Hedberg-Freidheim the period here involved is the taxable years 1949-1952 inclusive. At the end of the fiscal year 1949 taxpayer Hedberg-Freidheim had working capital exceeding $224,000. At a special meeting of the board of directors held March 3, 1949, Mr. Hedberg presented a motion prefaced by recitals to the effect that the reasons for withholding the payment of larger dividends in the past (acquisition and development of additional properties and new facilities and to adjust the interests of the principal shareholders to prevent further dissension) no longer existed since the expansion had been completed and that the corporation should declare at once a dividend of $170,000. Following this motion and as a part of the discussion in its support Mr. Hedberg read into the record a statement as follows:
 
 
 7
 "Before my motion for the payment of a cash dividend of $170,000.00 to the stockholders of Hedberg-Freidheim & Company is submitted to a final vote of the directors, I wish to state for the record that I have been advised by both the accountants and counsel for the company that if the company does not pay out in dividends as much cash as can reasonably be spared at this time, it will lay itself open to liability for surtax under the provisions of Section 102 of the Internal Revenue Code for unreasonable accumulations. It is apparent that at the present time the withholding of further reserves cannot be justified, and I wish to notify each and all of the directors that in case this motion is not carried, each dissenting director will be held personally responsible for any surtax levied against the company under Section 102 of the Internal Revenue Code."
 
 
 8
 On submission of the motion Mr. Hedberg, the owner of 140 shares, and his wife, the owner of 1 share, voted in favor of the motion while, Mr. Freidheim, the owner of 140 shares, and his wife, the owner of 1 share voted against the motion. Consequently the motion failed of passage. During the years 1949, 1950, 1951 and 1952 no dividends were paid, except that at a meeting of the directors on January 20, 1951, a dividend of $28,200 was declared which was paid during the fiscal year 1952. During these years the earnings of the company over and above current expenses and liabilities and over and above any expenditures plowed into the business were very substantial and resulted in working capital normally available as dividends for each of the years here involved as follows:
 
 
 9
 1949 ..................... $224,017.94
 1950 ..................... 299,153.88
 1951 ..................... 325,100.90
 1952 ..................... 361,392.20
 
 
 10
 As above observed, during this entire period the only dividends declared and paid were those declared in 1951 in the amount of $28,200. This evidence supports Mr. Hedberg's statement embodied in his motion for a declaration of dividends in the amount of $170,000, made at the directors meeting March 3, 1949, to the effect that the reasons for withholding the payment of larger dividends in the past, to-wit, for the acquisition and development of additional properties and new facilities, no longer existed and the record is barren of any evidence tending to show that during the period here involved there were any definite plans for expansion. No one was in better position to know the needs of the business of this corporation, its financial status, its operating necessities or its expansion probabilities than was Mr. Hedberg. He was a stockholder, a director, the president and manager of the corporation. His statement is further fortified by the fact that it was based in part on the advice of the company's counsel and accountants. It is observed too that as late as September 22, 1950, Mr. Hedberg in effect reaffirmed his prior declaration as to the needs, propriety or necessity for holding in the treasury of the corporation the large amount of surplus funds resulting from earnings instead of paying them out to the stockholders as dividends. Thus, he made a statement in an affidavit dated September 22, 1950, in which he declared:
 
 
 11
 "* * * that if Mr. Freidheim is apprehensive about spending the funds which are now on hand in said Corporations affiant is willing and offers to vote for a dividend at this time of $300,000.00 which will leave a balance sufficient for operating capital."
 
 
 12
 We shall now consider the decision of the Tax Court that Contracting was also availed of for the purpose of preventing the imposition of surtax upon its shareholders. As in the case of Hedberg-Freidheim, at a special meeting of its board of directors held March 3, 1949, Mr. Hedberg presented a motion for the declaration of a dividend in the amount of $40,000 in substantially the same words as the motion presented by him before the board of directors of Hedberg-Freidheim and he read into the record substantially the same statement as in the case of Hedberg-Freidheim. Mr. Hedberg and his wife voted for the motion while Mr. Freidheim and his wife voted against it, and the motion therefore failed of passage. The years involved as to Contracting are 1947, 1948, 1950, 1951 and 1952. During each of these years there were substantial net earnings and substantial additions to the working capital normally subject to the payment of dividends. However, no dividends were declared or paid. This is shown by the following table embodied in the court's findings:
 
 
 13
 Excess of
 Working Capital
 Annual Over Annual Additions
 Working Operating Operating Dividends to
 Capital Expenses Expenses Paid Surplus
 1947 ....... $120,763.93 $91,934.60 $28,829.33 ... $10,111.65
 1948 ....... 96,163.09 81,387.07 14,776.02 ... 7,763.50
 1949 ....... 91,512.14 86,771.06 4,741.08 ... 1,423.89
 1950 ....... 118,878.35 54,135.32 64,743.03 ... 15,914.83
 1951 ....... 126,632.10 73,759.35 52,872.75 ... 5,158.33
 1952 ....... 99,894.42 88,384.75 11,509.47 ... 12,197.99
 
 
 14
 The Tax Court, in referring to the liability of Contracting, among other things said:
 
 
 15
 "Very little of the testimony at the hearing was directed toward the determination of the reasonable needs of Contracting. It is a taxable entity and, so far as section 102 is concerned, must stand on its own feet. See Latchis Theatres of Keene, Inc., 19 T.C. 1054, aff[irme]d. [1 Cir.,], 214 F.2d 834. Section 102 applies to Contracting even though all but four of its shares were held by Hedberg-Freidheim. See Regulations 111, Sec. 29.102-1.
 
 
 16
 "At the end of 1947, the first year in issue with respect to it, Contracting had excess working capital of $28,827.33. During the period in issue petitioner plowed back into the business almost $20,000 more than it added to surplus. However, during all these years the corporation had an excess of working capital over operating needs and could have carried out its expansion program and still have paid a dividend."
 
 
 17
 The contention of counsel for taxpayers that the surtax imposed by Section 102 does not apply to Contracting because the stock of Contracting is wholly owned by Hedberg-Freidheim, and hence Contracting is not a taxable entity, is wholly without merit. Treasury Regulations 111, Sec. 29.102-1; Latchis Theatres of Keene, Inc., 19 T.C. 1054, affirmed, 1 Cir., 214 F.2d 834; Trico Products Corp. v. Com'r of Internal Revenue, 2 Cir., 137 F.2d 424.
 
 
 18
 Section 102(a), Internal Revenue Code of 1939, provides that a surtax shall be levied upon the net income of every corporation formed or availed of for the purpose of preventing the imposition of surtax upon its shareholders by permitting its earnings to accumulate instead of being distributed. Section 102(c), Internal Revenue Code of 1939, provides:
 
 
 19
 "The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary."
 
 
 20
 As in the case of Hedberg-Freidheim the record shows that there was an accumulation of earnings and the burden was on taxpayers to show that the accumulations were necessary for the needs of their business and that such earnings were not accumulated for the purpose of avoiding surtax upon their shareholders, and in this case neither Hedberg-Freidheim nor Contracting made any attempt to show its actual working capital requirements. It seems inevitably to follow that the taxpayers did not by a clear preponderance of the evidence prove that the purpose of the accumulations was not to avoid surtax upon their shareholders.
 
 The Tax Court found that:
 
 21
 "The petitioner Hedberg-Freidheim and Company did permit its earnings or profits to accumulate beyond the reasonable needs of its business and was availed of for the purpose of preventing the imposition of surtax upon its shareholders during the fiscal years ending in 1949 to 1952, inclusive."
 
 
 22
 It made a like finding as to Contracting. These findings are presumptively correct and in cases arising under Section 102 the Tax Court's determination is conclusive if supported by substantial evidence. Helvering v. Chicago Stock Yards Co., 318 U.S. 693, 63 S.Ct. 843, 87 L.Ed. 1086; Helvering v. Nat. Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Bride v. Commissioner of Internal Revenue, 8 Cir., 224 F.2d 39; Egan, Inc., v. Commissioner of Internal Revenue, 8 Cir., 236 F.2d 343. We think these findings are clearly sustained by substantial evidence. The evidence, contrary to the contentions of taxpayers, conclusively shows that the accumulation of earnings or profits exceeded the operating expenses in each of the taxable years. In fact, the evidence, viewed in a light most favorable to the government as the prevailing party, as to the accumulation of funds beyond the reasonable needs of the business of these corporations, in our view leads to the inescapable conclusion that both of these corporations were availed of for the purpose of preventing the imposition of surtax upon their shareholders. The decision of the Tax Court is therefore affirmed.