**MOTOR FUEL CARRIERS, INC.,**
Plaintiff,
v.
**UNITED STATES of America,**
Defendant.

No. 496.

United States District Court
N. D. Florida,
Marianna Division.

Feb. 15, 1962.

Wm. R. Frazier, Hill & Frazier, Jacksonville, Fla., for plaintiff.

Garry A. Pearson, Tax Division, Dept. of Justice, Washington, D. C., and Varn, U. S. Atty., Tallahassee, Fla., for defendant.

CARSWELL, Chief Judge.

### FINDINGS OF FACT

This action was instituted by the taxpayer to recover the following amounts, which it paid as income taxes, accumulated earnings taxes and interest for the calendar years 1956 and 1957:

| Year | Income Tax Deficiency | Accumulated Earnings Tax Deficiency | Interest | Total |
|------|-----------------------|-------------------------------------|----------|-------|
| 1956 | $621.45 | $19,011.44 | $2,384.99 | $22,017.88 |
| 1957 | $429.18 | $21,492.12 | $1,347.71 | $23,269.01 |
| | | | | $45,286.89 |

The taxpayer is a Florida Corporation, all of whose stock was purchased by John S. Espy in 1946. At the time of the purchase, the taxpayer had no assets other than State and Interstate Commerce Commission certificates authorizing the transportation of petroleum products in Florida, Alabama and Georgia.

The Commissioner of Internal Revenue in auditing the taxpayer's returns for 1956 and 1957 determined that the corporation had unreasonably accumulated its earnings for those years and imposed the surtax provided for in Section 531 of the Internal Revenue Code of 1954, 26 U.S.C. § 531.[1] The corporation paid the additional taxes as assessed and filed claims for refund. The claims were disallowed.

At the end of 1956 the corporation had accumulated surplus in the amount of $389,411. At the end of 1957 the surplus accumulated was $462,210. In the year 1956 the corporation had gross re-

1. "§ 531. Imposition of accumulated earnings tax.

"In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of—

"(1) 27½ percent of the accumulated taxable income not in excess of $100,000, plus

"(2) 38½ percent of the accumulated taxable income in excess of $100,000."
(26 U.S.C. § 531.)

"§ 532. Corporations subject to accumulated earnings tax.

"(a) General rule.—The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b)) formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed. * * *"
(26 U.S.C. § 532.)

"§ 533. Evidence of purpose to avoid income tax.

"(a) Unreasonable accumulation determinative of purpose.—For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary. * * *"
(26 U.S.C. § 533.)

ceipts of $1,312,655.16 and taxable income of $160,025.50. In the year 1957 it had gross receipts in the amount of $1,385,873.78 and taxable income of $154,700.74.

In the year 1956 the corporation had a net profit in the amount of $85,570 and in 1957 a net profit of $83,875. All figures herein set forth, while subject to minor controversy with respect to adjustments, are substantially correct and will be taken by the Court as the final figures subject to later correction on motion of either of the parties.

During the year 1956 the corporation paid a dividend of $20,000 to its stockholders, over $19,000 of which went to Mr. Espy personally. No dividend was declared or paid in 1957 nor had any other dividends been declared or paid prior to that time or since.

An average cash balance of $250,000 was maintained during 1956 and 1957 in the Bay National Bank, Panama City, Florida. During the same period, an average balance of $74,000 was maintained in the Florida National Bank in Jacksonville, Florida. Other bank accounts carried an average of $25,500, making an aggregate cash on hand approximately $350,000.

■ The taxpayer relied principally upon the testimony of Mr. Espy, the President and majority stockholder, to prove that the earnings and profits were not unreasonably accumulated. He stated as justification for accumulation that among other things the corporation was planning to construct a terminal building.

The evidence shows that on April 3, 1954, the Company's Board of Directors met to consider the advisability of a proposal for the purchase of waterfront property for this purpose. On January 3, 1956, the minutes of the Board of Directors reflect that the purchase of 10 acres of waterfront property was authorized. On May 21, 1956, at the cost of $10.075 10 acres of waterfront land was purchased. From the date of the purchase on May 21, 1956, until December 1, 1960, although Espy states that expenses were incurred for improvements made to the property during the earlier part of 1960, such expenditures were not capitalized on the books of the corporation until December 1, 1960. All expenditures other than the purchase of the land were incurred several months after the corporation instituted this suit on July 18, 1960, and all but $12,000 of expenses were incurred within six months of the trial.

The total cost of the terminal building was to be $288,962.50. The plans submitted as evidence of the proposed construction were dated August 1, 1961, more than a year after suit was instituted. It does not appear that any substantial steps were taken by the taxpayer toward development of the waterfront property in the years 1956 and 1957.

The Court also finds that in the years 1956 and 1957 the plans for the future use of the accumulation were not in existence nor were they specific or definite. The resolution of 1954 was merely a statement considering the advisability of a proposal for purchasing waterfront property to build a terminal.

The record shows that on March 7, 1958, Espy stated that he wished to lease a site for a petroleum terminal to an oil company rather than to build the terminal himself. At an informal conference, which was held in 1959 at which the Government agent was attempting to determine the justification for the accumulation, Espy made no mention of the oil terminal as justification for the accumulated earnings.

The Court, therefore, finds that there being no specific or definite plan in existence that the taxpayer could not reasonably anticipate the needs of the business with respect to the oil terminal.

■ The evidence shows that taxpayer's business was seasonable and that there was greater demand for certain of its products at one time of the year than at another. The company's volume of traffic is not predictable, but spasmodic and irregular. Espy also stated that the

retention of the surplus in 1956 and 1957 was necessary in order to meet contingencies which might necessitate more rolling stock at one time of the year than at another. He stated that it was required to have a surplus of trucks and tank cars on hand and to have adequate working capital to be able to purchase additional equipment on short notice. He testified further that the business was highly competitive and that in order to meet the competition, the corporation was required to purchase larger trucks and tank cars in order to carry more fuel and petroleum products at less operating cost.

The corporation's records show that most of its equipment was financed through lending institutions and that although a considerable portion of its expense was incurred in satisfying notes relative to the financing of the equipment, the evidence does not support taxpayer's assertion that accumulations for this purpose were reasonable. The purchase of equipment with greater carrying capacity would of necessity result in the ability of the corporation to transport larger quantities of petroleum products and, therefore, its expenses would be reduced accordingly.

The Court is unable to sustain the corporation's contention that competition from the railroads or pipe line carriers or other jobbers necessitated so great an accumulation of surplus. Equipment leased by Mr. Espy and others to the taxpayer was available for use by the taxpayer as the need arose. In view of taxpayer's history of financing equipment, the need for so great a surplus for their immediate or reasonably anticipated needs is not convincing.

While it is not relevant to the determination that the surplus of the corporation was unreasonably accumulated for the years 1956 and 1957, for the purpose of clarifying its financial status, the following earnings for the years 1958 through 1960 are herein set forth:

| Year | Taxable Income | Income Tax | Current Earnings Retained |
|------|---------------|------------|---------------------------|
| 1958 | $176,549.02 | $ 83,374.02 | $ 93,175.00 |
| 1959 | 265,036.77 | 130,670.41 | 134,366.36 |
| 1960 | 193,706.40 | 92,945.83 | 100,760.57 |
| Total | $635,292.19 | $306,990.26 | $328,301.93 |

Added to the surplus accumulated through 1957, the current earnings retained for the years 1958 through 1960 have resulted in surplus in excess of $700,000 through 1960.

Although the corporation could not predict with sufficient certainty that its business would continue to increase and that its earnings would continue as it had in the past, the fear of competition and fear of lack of liquidity which are assigned as reasons for the accumulation must be reasonable under the circumstances. Within a short time from the time that Espy took over the operation of the corporation up to the present time the earnings have continued to increase and the profits, while fluctuating from year to year, have been substantial. Most business must meet competition with like type of businesses and must maintain inventory or rolling stock in sufficient quantities to meet such competition, but fear of competition alone, particularly where its record of earnings in the past does not justify such fear, does not warrant accumulations of surplus in excess of that which is reasonable. Likewise, the reasonable businessman is constantly in a position where he might lose some sources of revenue from his existing customers. Espy contends that his fear of losing Government contracts was another basis for the accumulation of earnings.

The Court finds that in light of the taxpayer's past record of earnings throughout the whole history of the business, the fear or competition and the fear of losing lucrative contracts was unjustified and not reasonable under the circumstances.

## CONCLUSIONS OF LAW

[3] Accumulations of earnings by corporations is a major avenue of individual income tax avoidance. Individual proprietorships and partnerships are subject to the full impact of progressive income tax returns, whether or not the earnings are retained in the business. Earnings retained by corporations are not affected by graduated income tax returns until these earnings are distributed to the corporation shareholders and only when these earnings are distributed. Congress imposed an additional tax on corporation earnings which have been accumulated in order to avoid distribution of such earnings in the form of dividends, and thus to avoid personal income tax on the shareholder recipient. Sections 531 and 532(a) of the Internal Revenue Code of 1954, supra, impose an additional tax upon a corporation which permits its earnings and profits to accumulate instead of being divided or distributed, thus avoiding the income tax upon its shareholders. Section 533 provides that where the earnings and profits of a corporation accumulate beyond the reasonable needs of the business, it is determinative of the purpose to avoid the income tax with respect to its shareholders. The law places the burden upon the taxpayer corporation to prove to the contrary by a preponderance of the evidence. World Pub. Co. v. United States, 169 F.2d 186 (10th Cir. 1948), certiorari denied 335 U.S. 911, 69 S.Ct. 480, 93 L.Ed. 443.

■ The ultimate question presented for determination then is whether the corporation in 1956 and 1957 permitted its current earnings to accumulate beyond the reasonable needs of the business. The taxpayer must also prove under Section 533 that the accumulation of earnings beyond the reasonable needs of the business was not for the purpose of avoiding the income tax with respect to its shareholders. The reasonableness of the needs of the taxpayer's business is a question of fact to be determined from all the evidence. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346 (1938); Helvering v. Chicago Stock Yards Co., 318 U.S. 693, 63 S.Ct. 843, 87 L.Ed. 1086 (1943).

■ In considering the reasonableness of the accumulation, the financial history of the corporation, its dividend policy, the financial condition of the corporation at the close of the taxable year, and the use of the undistributed earnings and profits should be considered. See also Treasury Regulations on Income Tax (1954 Code), Section 1.537–1 and 1.537–2.

■■ It is the taxpayer's intention manifested at the time of the accumulation and not subsequently declared intentions which the Court must consider in determining whether the profits were accumulated for the reasonable needs of the business or to avoid tax upon shareholders. A corporation may not accumulate surplus for "unexpected demands" of the business. Unexpected demands and unanticipated emergencies are not the reasonable needs provided for in these statutes.

■ The intention asserted by the taxpayer must be manifested by some contemporaneous course of conduct directed toward the purpose claimed for the accumulation. Smoot Sand & Gravel Corp. v. Commissioner, 241 F.2d 197 (4th Cir. 1957), certiorari denied 354 U.S. 922, 77 S.Ct. 1383, 1 L.Ed.2d 1437. Indefinite and nebulous plans for expansion or conversion are not sufficient to prevent the imposition of the tax. Barrow Manufacturing Co. v. Commissioner of Internal Revenue, 294 F.2d 79 (5th Cir. 1961); Hedberg-Freidheim Contracting Co. v. Commissioner, 251 F.2d 839 (8th Cir. 1958).

■ In accordance with the foregoing findings of fact and conclusion of law, the Court finds that the surplus accumulated was in excess of that reasonably

**502**

needed by the business and in excess of the reasonably anticipated needs of the business for the years 1956 and 1957 and, therefore, it is determinative of the purpose of the corporation to avoid the income tax with respect to its shareholders.

The determination by the Director of the Internal Revenue Service is affirmed.

Appropriate order will be entered this date.