MOTOR FUEL CARRIERS, INC.,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19745.

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1963.

William R. Frazier, Hill & Frazier, James P. Hill, Jacksonville, Fla., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Clinton N. Ashmore, U. S. Atty., Tallahassee, Fla., Richard J. Heiman, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before JONES and BELL, Circuit Judges, and SIMPSON, District Judge.

JONES, Circuit Judge.

Motor Fuel Carriers, Inc., the appellant, referred to in this opinion as the taxpayer, paid a deficiency accumulated earnings penalty assessment made pursuant to Section 531 of the Internal Revenue Code of 1954, by the Commissioner of Internal Revenue, and brought a refund suit in the United States District Court for the Northern District of Florida. The court made findings of fact and conclusions of law sustaining the determination of the Commissioner that the taxpayer had accumulated earnings beyond the reasonable needs of its business for the purpose of avoiding income tax with respect to its shareholders. Motor Fuel Carriers Inc. v. United States, 202 F.Supp. 497. Judgment was entered for the United States, from which this appeal was taken.

The taxpayer is a Florida corporation. John S. Espy purchased all of its capital stock in 1946. At that time the corporation was inactive and its only assets were certificates issued by the Interstate Commerce Commission and state regulatory bodies authorizing the over-highway transportation of petroleum products. Espy procured tank trucks and put the taxpayer corporation into operation as a going concern. The business was confined to the operation of tank trucks. It has only a few customers. About forty percent of its hauling was for the United States and most of the rest was for major oil companies. The Government normally paid its bills in thirty to sixty days and other customers remitted in a much shorter time. Espy was, at the outset, and has continued to be, the guiding genius of the enterprise. He and his wife have at all times been the owners of substantially all of the stock. The penalties were assessed for the years 1956 and 1957. At the end of 1956 the earned surplus of the company was $389,411, and at the end of 1957 the earned surplus was $462,210. In 1956, gross receipts totaled $1,312,655. Net profits were $85,570, and taxable income amounted to $160,025. The same items for 1957 were, respectively, $1,385,873, $83,875 and $154,700. In 1956 a dividend of $20,000 was paid by the taxpayer, of which $19,000 was received by Mr. Espy. This was the only dividend paid between the time Mr. Espy acquired the corporation and the time of the trial. During the years 1956 and 1957 the taxpayer maintained bank accounts with balances averaging $350,000.

We are in substantial agreement with the conclusions reached by the district court. We might have felt that there was no necessity of discussing those matters covered by the findings and conclusions of the district court except for the insistence of the taxpayer that a reversal is required by the holding of this Court in Sterling Distributors, Inc. v. United States, 5th Cir.1963, 313 F.2d 803.

The taxpayer urges that its plans for the construction of a terminal justified the accumulation of funds. The evidence on this issue was reviewed by the district court and made the basis of its finding that there was not, during the years in question, any specific or definite plan for the construction of a terminal. 202 F.Supp. 497, 499. The finding is supported by the evidence. The accumulated earnings tax is imposed upon taxable income of a corporation accumulated beyond the reasonable needs of the business of the corporation for the purpose of avoiding income tax to shareholders. 26 U.S.C.A. (I.R.C.1954) §§ 531–537. The term, "reasonable needs of the business" includes the reasonably anticipated needs of the business. 26 U.S.C.A. (I.R.C.1954) § 537. The statutory provision which includes "reasonably anticipated needs" within the definition of reasonable needs of the business, is new in the 1954 Code. Both the taxpayer and the Government call attention to the legislative history. In the Report of the House Ways and Means Committee it is said:

> "It is intended that this provision will make clear that there is no requirement that the accumulated earnings and profits be invested im-

mediately in the business so long as there is an indication that future needs of the business require such accumulation. In any case where there exists a definite plan for the investment of earnings and profits, such corporation need not necessarily consummate these plans in a relatively short period after the close of the taxable year. However, where the future needs of the business are uncertain or vague, or the plans for the future use of the accumulations are indefinite, the amendment does not prevent application of the accumulated earnings tax." H.Rep. No. 1337, 83rd Cong. 2d Sess., pp. A172–A173; 3 U.S.C. Cong. & Adm. News, 1954, pp. 4017, 4311–4312.

The Senate Finance Committee reported:

"One of the principal reasons for confusion as to application of the section 102 tax has been the lack of adequate standards as to what constitutes the reasonable needs of the business. Some of the standards informally employed in the past, such as the distribution of 70 percent of earnings, have been erroneous or irrelevant. More often, in the absence of adequate guidance, revenue agents in examining cases have applied their individual concepts as to business needs.

"As a result some improper criteria developed which have led to criticism of the tax on unreasonable accumulations. One such principle is the so-called immediacy test, under which there must be an immediate need for the funds in order to justify the retention of earnings. In some cases section 102 was applied even though the corporation had definite plans for expansion and the bona fides of the expansion program were not in question.

"In order to eliminate the immediacy test, both the House and your committee have expressly provided in the statute that the reason-

able needs of the business shall include the 'reasonably anticipated' needs of the business. It is contemplated that this amendment will cover the case where the taxpayer has specific and definite plans for acquisition of buildings or equipment for use in the business. It would not apply where the future plans are vague and indefinite, or where execution of the plans is postponed indefinitely.

"The criticism has also been made that, in determining the reasonable needs of the business, consideration has been frequently given to events occurring after the close of the taxable year. Your committee agrees with the House that only the facts as of the close of the taxable year should be taken into account in determining whether an accumulation is reasonable. If the retention of earnings is justified as of the close of the taxable year, subsequent events should not be used for the purpose of showing that the retention was unreasonable in such year. However, subsequent events may be considered to determine whether the corporation actually intended to consummate the plans for which the earnings were accumulated." S. Rep. No. 1622, 83rd Cong. 2d Sess. p. 69; 3 U.S.C.Cong. & Adm.News 1954, pp. 4621, 4701.

The Government stresses the statement that where the plans for future use of the accumulations are indefinite, the 1954 amendment does not prevent the imposition of the tax. The taxpayer, on the other hand, underscores the statement that subsequent events may be considered in determining whether there was an intent to consummate the plan for the future use of accumulated funds. The taxpayer showed that the terminal was subsequently constructed. But, as the district court noted, the plans were completed subsequent to the beginning of the district court litigation and most of the cost could have been taken from current earnings dur-

9

ing the construction period. But after all, the question is primarily one of fact and the trier of the facts has resolved the fact issue against the taxpayer. There is ample evidence to support the district court's findings and we are in agreement with its determination that there was no specific or definite plan in existence during the tax years here involved. See Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346. Barrow Manufacturing Co. v. Commissioner, 5th Cir.1961, 294 F.2d 79, cert. den. 369 U.S. 817, 82 S.Ct. 827, 7 L.Ed.2d 783, was very like this case factually, and there a like result was reached. In the Sterling Distributors case there was an imperative need for a new warehouse for which funds were accumulated, and a fixed intention during the tax years involved to go forward with the construction of such a warehouse. Such was not the case here.

The taxpayer urged before the district court and here urges that it should be entitled to such accumulation as would give it at least a two-to-one ratio between current assets and current liabilities, and contends that the opinion in Sterling Distributors supports that view. The ratio between current assets and current liabilities is but one factor to be considered, and it is to be considered in connection with the particular business of the corporation under scrutiny. In the case before us, the figures used by the taxpayer in computing the ratios for the two years included in current assets for 1956 and 1957 notes payable having maturities greater than a year, and for 1957 included an item of "Accounts Payable, Equipment on Order." A liability is current, according to the recognized writers on accounting, when it becomes payable within a year from the date of the balance sheet. The opinion of the taxpayer's accountant that all equipment obligations are current liabilities seems to be without upholding from other sources. Equipment on order would not seem to be a proper balance sheet asset nor would the price

to be paid for it constitute a proper balance sheet liability in determining a current assets—current liabilities ratio. A revision of the balance sheet to reflect more accurately the current liabilities would show a better than two-to-one ratio.

It is contended by the taxpayer that the decision in Sterling Distributors requires a holding here that the taxpayer was entitled to a cash reserve of an amount sufficient to cover one year's operating expense. This rule of thumb, announced by the Tax Court in J. L. Goodman Furniture Co. v. Commissioner, 11 T.C. 530, and F. E. Watkins Motor Co., Inc. v. Commissioner, 31 T.C. 288, is not a controlling principle and each case must be decided by the needs of the business of the particular taxpayer in the determinative year or years. Barrow Manufacturing Co. v. Commissioner, supra; Dixie, Inc. v. Commissioner, 2nd Cir. 1960, 277 F.2d 526, cert. den. 364 U.S. 827, 81 S.Ct. 62, 5 L.Ed.2d 54. The taxpayer had no inventory, it had no doubtful receivables and the receivables it had were paid promptly. If its business had declined it would have had a comparable decline in operating expense. The taxpayer in this case during the tax years here involved had no need for a cash accumulation equal to a year's cost of operation.

The argument of the taxpayer that accumulations were required because of competition and possible loss of business are fully discussed and properly disposed of in the opinion of the district court. They need not be further examined here.

The district court has decided that the taxpayer was not entitled to accumulate earnings during the years under review for the purpose of constructing terminal facilities. It has determined that the accumulations for these years were beyond the reasonably anticipated needs of the business. These determinations are entitled to affirmance under the clearly erroneous rule. American Pitch Pine Export Co. v. Commissioner, 5th Cir. 1951, 188 F.2d 721.

The taxpayer, anticipating that this result might be reached by this Court brings to our attention the accumulated earnings credit provision of the 1954 Act. Under the 1939 Code, if corporate earnings were accumulated beyond the reasonable needs of the business for the purpose of avoiding income tax with respect to shareholders, the entire accumulation during the tax year was subject to the penalty tax, even though some part of the accumulation might have been reasonable and justified. To afford relief against the harshness of this provision when applied in situations where a part, but not all, of the accumulation was for the reasonable needs of the taxpayer's business, a new provision was placed in the 1954 Code [1] by which there would be eliminated from the accumulated taxable income such part of earnings and profits as were retained for the taxpayer's reasonable needs.

■■ The district court apparently gave no consideration to this new statutory provision for an accumulated earnings credit. The taxpayer complains that "The District Court in this case has disposed of the penalty tax as if it had arisen under the 1939 Code on an all or nothing basis." This seems to be true, but it is also true that the taxpayer tried the case upon the same basis and, claiming that the entire accumulation was proper, it made no attempt to demonstrate that, if not entitled to the whole, it was entitled, under the evidence, to some designated part. Cf. Raymond I. Smith, Inc. v. Commissioner, 33 T.C. 141. Even after the district court's findings of fact and conclusions of law had been made, the taxpayer made no effort to procure amended or additional findings. Rule 52(b) Fed. Rules Civ.Proc. The burden rests upon the taxpayer to show that there is a business need for the accumulation. World Publishing Co. v. United States, 10th Cir. 1948, 169 F.2d 186, cert. den. 335 U.S. 911, 69 S.Ct. 480, 93 L.Ed. 443. The burden is no less as to a part than as to the whole. Since this is, perhaps, a pilot case, we are not willing to say that a finding of the failure of the taxpayer to prove that its entire accumulation was for the needs of its business of necessity requires a determination that no part of the accumulation was reasonable. We conclude that the judgment should be vacated and the cause remanded to the district court for a finding as to whether the taxpayer has shown itself entitled to an accumulation of earnings and profits in the tax years such as would permit an accumulated earnings credit adjustment, and if so, to render a judgment in the appropriate amount. Additional testimony may be taken if desired by the district court.

Vacated and remanded.

[1] "For the purposes of subsection (a) [defining accumulated taxable income], in the case of a corporation other than a mere holding or investment company the accumulated earnings credit is (A) an amount equal to such part of the earnings and profits for the taxable year as are retained for the reasonable needs of the business, minus (B) the deduction allowed by subsection (b) (6). For purposes of this paragraph, the amount of the earnings and profits for the taxable year which are retained is the amount by which the earnings and profits for the taxable year exceed the dividends paid deduction (as defined in section 561) for such year." 26 U.S.C.A. (I.R.C. 1954) § 535(c) (1).