**BAHAN TEXTILE MACHINERY COMPANY, Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 66–669.**

United States District Court,
D. South Carolina,
Greenville Division.

Dec. 21, 1970.

A. F. Burgess, and Wesley M. Walker, Greenville, S. C., for plaintiff.

Jack Warren, U. S. Dept. of Justice, Washington, D. C., and John K. Grisso, U. S. Atty., Greenville, S. C., for the Government.

## ORDER

MARTIN, Chief Judge.

This cause having come on for trial before the Court, sitting without a jury, the Court, having considered the testimony of the witnesses and other evidence adduced at the trial, after careful study of the briefs submitted, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This action was instituted by the plaintiff, Bahan Textile Machinery Company, Inc., against the defendant, the United States of America, for the recovery of $323,538.91 assessed against and collected from it as federal income and accumulated earnings taxes for 1959, 1960 and 1961, plus interest and costs.

2. The questions presented for decision are as follows:

A. Whether the plaintiff permitted its earnings and profits for 1959, 1960 and 1961 to accumulate beyond the reasonable needs of its business.

B. Whether one of the plaintiff's purposes in permitting its earnings and profits for 1959, 1960 and 1961 to accumulate was avoiding the income with respect to its shareholders.

C. Whether, for purposes of computing amortization deductions, the useful life of leasehold improvements was 33⅓ years as determined by the Commissioner of Internal Revenue rather than a shorter period used by the plaintiff.

D. Whether the defendant is entitled to setoff, against any amount the plaintiff might otherwise be entitled to recover herein, the amount of the tax benefits which accrued to the plaintiff as a result of its claiming unallowable tax deductions.

3. As a result of the audit of the plaintiff's income tax returns for the suit years, 1959, 1960 and 1961, the Commissioner determined that $55,554.94, $43,201.23 and $54,782.64, respectively, which the plaintiff claimed as rental deductions in computing its income tax liability for such years was unallowable. In its complaint, the plaintiff alleged that these amounts were erroneously disallowed and claimed that it was entitled to recover the additional taxes assessed against and collected from it as a result of the disallowance. Such taxes were, therefore, included in the amount for which it demanded judgment. However, the matter was settled by the parties prior to trial and the $323,538.91 originally claimed has been reduced accordingly.

4. Bahan Textile Machinery Company, Inc., hereinafter sometimes referred to as the plaintiff or the corporation, was incorporated under the laws of South Carolina in 1926. It was organized and capitalized by William H. Bahan and he was, until his death on June 29, 1949, its chief executive officer. Its principal business activity has always been the manufacture of textile machinery parts.

5. The plaintiff has always been a closely held family corporation. Since the date of its incorporation, the plaintiff has had 150 shares of capital stock outstanding having a par value of $100.00 per share. At the time of his death in 1949, William H. Bahan owned 149

of these shares, following his death the 149 shares he had owned were divided equally between his wife, Esther C. Bahan, his son, Edward F. Bahan, and his daughter, Winifred B. Peters. Thereafter, on August 23, 1949, and April 14, 1952, Esther C. Bahan transferred 10 shares and 19⅝ of her shares, respectively, to her son, Edward F. Bahan. On December 14, 1956, she transferred her remaining 19⅝ shares to her daughter, Winifred B. Peters. In 1960 and 1961, Winifred B. Peters transferred some of her shares to Otto E. Peters, her husband, and their children. Thus, since April 14, 1952, the son Edward F. Bahan has owned 80½ shares of the plaintiff's stock. Since December 14, 1956, Winifred B. Peters, or members of her immediate family, has owned the remaining 69½ shares. Since April 14, 1952, Edward F. Bahan has been the plaintiff's majority or controlling stockholder.

6. Edward F. Bahan started to work for the plaintiff in 1934 when he was 22 years old and has worked in all phases of its business except bookkeeping. Following the death of his father in July of 1949, he became the plaintiff's President and Treasurer. His mother, Esther C. Bahan, and sister, Winifred B. Peters, were nominal Vice Presidents. In 1952, Esther C. Bahan was named Secretary. Following the latter's death on February 22, 1965, Winifred B. Peters became Secretary.

7. Since 1949, all of the members of the plaintiff's Board of Directors have been members of the Bahan family, namely, Edward F. Bahan, Esther C. Bahan and Winifred B. Peters.

8. Notwithstanding that Esther C. Bahan and Winifred B. Peters were officers and members of the Board of Directors of the plaintiff, Edward F. Bahan was the only member of the family who was actively engaged in the plaintiff's operation. He was in complete charge of all the plaintiff's operations; he had complete control over its financial affairs and made all of its management decisions.

9. The plaintiff used the accrual method of accounting and the calendar year as its accounting period.

10. Since Edward F. Bahan has had control of its affairs, the plaintiff has, according to its tax returns made substantial after-tax earnings and profits, all of which it has retained. Its tax returns show that such retained earnings increased from $253,982.02 at the end of 1947 to $2,676,773.04 at the close of 1964. The amount of earnings added to its surplus and the ending surplus balance for each of the years during that period were as follows:

| | SURPLUS | |
|---|---|---|
| Year Ending | Net Addition | Ending Balance |
| 12–31–47 | $ | $ 253,982.02 |
| 12–31–48 | 89,535.12 | 343,517.14 |
| 12–31–49 | 145,406.30 | 488,923.44 |
| 12–31–50 | 167,069.13 | 655,992.57 |
| 12–31–51 | 77,401.02 | 733,393.59 |
| 12–31–52 | 131,026.96 | 864,420.55 |
| 12–31–53 | 119,234.41 | 983,654.96 |
| 12–31–54 | 74,858.59 | 1,058,513.55 |
| 12–31–55 | 150,168.86 | 1,208,682.41 |
| 12–31–56 | 136,040.67 | 1,344,723.08 |
| 12–31–57 | 182,465.22 | 1,527,188.30 |
| 12–31–58 | 167,528.87 | 1,694,717.17 |
| 12–31–59 | 193,095.33 | 1,887,812.50 |
| 12–31–60 | 114,681.25 | 2,002,493.75 |
| 12–31–61 | 169,644.87 | 2,172,138.62 |
| 12–31–62 | 154,881.90 | 2,327,020.52 |
| 12–31–63 | 198,555.34 | 2,471,486.22 |
| 12–31–64 | 205,286.82 | 2,676,773.04 |

11. During 1961, the last of the three years in suit, and the prior seven years, the plaintiff had no long term liabilities and its current liabilities were relatively small. The amounts of working capital (current assets less current liabilities) which were available to the plaintiff at the end of each of the years 1954 through 1961, the plaintiff's working capital ratio and the return it made on investments for such years were as follows:

| Year Ended | Available Working Capital | Working Capital Ratio | Return on Investments |
|---|---|---|---|
| 12–31–54 | $ 753,109.37 | 5.30:1 | 7.15% |
| 12–31–55 | 941,727.97 | 4.60:1 | 12.96% |
| 12–31–56 | 1,099,758.97 | 5.47:1 | 10.45% |
| 12–31–57 | 1,286,949.94 | 5.98:1 | 12.48% |
| 12–31–58 | 1,470,729.10 | 8.21:1 | 10.24% |
| 12–31–59 | 1,640,920.47 | 6.70:1 | 10.63% |
| 12–31–60 | 1,765,390.76 | 10.28:1 | 5.83% |
| 12–31–61 | 1,939,686.58 | 6.59:1 | 8.06% |

12. During the suit years, the plaintiff's monthly bank balance ran as high

as $1,540,148.21 and was never less than $1,000,000.00. Also, during the suit years, the plaintiff had from $300,000.00 to $420,000.00 invested in securities of the United States Government. In addition, Edward F. Bahan, Esther C. Bahan and Winifred B. Peters, collectively, owed the plaintiff $108,105.16 during each of the suit years. Thus, at no time during the suit years did the total of the plaintiff's cash, securities and receivables from shareholders drop below $1,400,000.00.

13. The plaintiff did not in any year prior to 1964 declare a dividend on its stock. (Tr. 403)

14. The defendant determined that the plaintiff was availed of, with respect to 1959, 1960, and 1961, for the purpose of avoiding the income tax, with respect to its shareholders, by permitting earnings and profits to accumulate instead of being divided or distributed. Accordingly, the accumulated earnings taxes in issue were assessed against and collected from the plaintiff.

15. The plaintiff contends that the accumulated earnings taxes were erroneously and illegally assessed against it.

16. The plaintiff alleges that it retained its earnings and profits for 1959, 1960 and 1961 to meet the reasonable needs of its business. Specifically, it alleges that its earnings for those years were retained to meet its needs for (a) working capital, (b) replacement of machine tools, (c) replacement of foundry, (d) annual replacement of machinery and equipment, (e) production of a complete loom, (f) acquisition of office machinery, (g) establishment of an employee pension plan and (h) maintenance of its competitive position.

### Working Capital

17. The plaintiff originally took the position that the amount of working capital needed to carry it through a normal business cycle consisting of processing raw materials, converting raw materials into finished products, selling such finished products and collecting its billings

therefor was $590,000.00. In addition, it contended that it needed $150,000.00 to meet a peak cycle operation and $25,000 to carry some accounts beyond the usual collection period. The plaintiff did not maintain a perpetual inventory and it took a physical inventory only at the end of each year or the value of the inventory was merely estimated by management. Neither did it keep records on peak period inventory.

At the trial, the plaintiff offered in evidence computations showing that the plaintiff needed working capital of $965,706.49, $957,858.71 and $988,511.77 for such years, respectively. These figures purport to have been determined in accordance with the *Bardahl* formula which has evolved from the Tax Court's decision in Bardahl Manufacturing Corp. v. Commissioner, decided July 23, 1965 (P-H Memo T.C., par. 66, 200). This computation was admittedly made after the audit which led to the assessment of the taxes in question. The purpose of the *Bardahl* computation is to determine the length of a business cycle.

Plaintiff computed its business cycle to be 27 weeks. The method used by plaintiff to make the computation was not adequate. The Court cannot accept the computation. From the record the amount of working capital contended by the plaintiff as necessary is unreasonable.

After consideration of all factors and the record of the case the court finds working capital requirements of the plaintiff corporation at the end of 1959, 1960 and 1961 were $372,609.73, $393,750.30 and $418,410.70, respectively.

### Replacement of Machine Tools and Foundry

18. The plaintiff contends that it needed to retain a substantial portion of its accumulated earnings in order to replace its machine tools and foundry. The amounts claimed as needed for these purposes were not stated with specificity. The amounts ranged from $3,125,000.00 to $1,520,354.80. The Court finds

that no specific and definite plan had been made by the plaintiff. The president of the corporation testified that he did not complete his survey of the costs involved until 1962 and that he was not in a position to make a decision on the matter until he received the cost figures. The court recognizes that plaintiff may need a reasonable reserve to replace machine tools and portions of the foundry in excess of the amount allowed by depreciation; however, plaintiff's accumulated earnings at the end of 1958 should have been sufficient.

### Production of a Complete Loom

19. The plaintiff contended that it needed to retain somewhere between $1,-000,000.00 and $5,000,000.00 in order to pursue a plan to the design and produce a complete loom. At the trial, Edward F. Bahan testified that to assure any degree of success in expanding the plaintiff's operation to include the production and sale of looms, at least $5,-000,000.00 would be necessary. None of the plaintiff's employees were working on a design of a new loom. In fact, the testimony was that this matter never got beyond the discussion state. The Court finds that no part of the plaintiff's earnings were reasonably retained for the design and production of a new loom.

### Acquisition of Office Machinery

20. Plaintiff contends that it needed $100,000.00 to modernize its office. The record does not support plaintiff's contention. Plaintiff had not adopted a specific plan.

### Establishment of an Employee Pension Plan

21. The plaintiff adopted a pension plan for its employees in December of 1965. The past service feature of the plan cost the plaintiff $300,000.00. Edward F. Bahan testified that planning with respect to the pension plan was started previous to 1957, but that the matter had to be "shelved" in that year because of the unavailability of funds. He stated that due to a continuing lack of funds the pension plan could not be instituted in either of the suit years. The court finds that the plaintiff did have available to it $300,000.00 with which to put a pension plan into effect in each of the suit years.

### Maintenance of Competitive Position

22. Plaintiff contends that the amount needed to maintain its competitive position is included in the amount needed to produce a complete loom. At trial, the president testified that he felt that plaintiff should have $600,000.00 for use in the event its principal competitor should institute a price war. There is no evidence that plaintiff was ever involved in or threatened with a price war with any company. This alleged need does not meet the tests.

23. The property on which the plaintiff conducted its business was owned by Edward F. Bahan, Winifred B. Peters and Esther C. Bahan. This property, including certain improvements thereon, was leased by the plaintiff. During the tenure of the lease, leasehold improvements were made to this property by the plaintiff. Upon audit of the tax returns for the years involved the Commissioner of Internal Revenue determined that the amortization deductions claimed on these leasehold improvements were excessive and not based upon the actual useful lives of these assets. In the statutory notice of deficiency (90-day letter) sent to the plaintiff, this determination was stated as follows:

(b) Excessive depreciation

To disallow excessive depreciation, deducted as amortization of leasehold improvements, and to restore to income.

Section 178(b), I.R.C.1954, provides that between related lessor and lessee the improvements made by the lessee shall be depreciated over the useful life of the property and not amortized over the remaining life of the lease. Useful life of the improvements is 33⅓ years. See Exhibit B for details of the computations.

■ As a result of the foregoing determination by the Commissioner, adjustments were made to the amortization deductions the plaintiff claimed. The plaintiff failed to prove that, for purposes of computing amortization deductions, the useful life of its leasehold improvements was other than 33⅓ years.

24. Substantial sums of money were withdrawn from the plaintiff and paid to or on behalf of the plaintiff's stockholders or members of their families. During the years 1951 through 1965, the plaintiff paid Esther C. Bahan and Winifred B. Peters $126,000.00 and $67,469.10, respectively. During the years 1952 through 1968, the plaintiff paid Otto E. Peters $174,007.00.

During the years 1958 through 1965, the plaintiff paid Paul Bahan $32,000.00. For these payments, amounting in the aggregate to $399,476.10, no substantial services, if any, were rendered. In addition, the plaintiff furnished to Edward F. Bahan, Harriet Bahan, Esther C. Bahan and Winifred B. Peters four luxury automobiles. It also furnished at least some of the oil, gas, maintenance and repair expense incurred in connection with the operation of these automobiles.

25. The claimed grounds of the accumulations of the earnings of the taxable years was based upon a plan or contention which, at the end of each taxable year, was not a specific, definite, and feasible plan for the projected use of accumulated earnings within a reasonably definite time in the future; and was vague, generalized, and related to only the possible use of accumulated earnings at an indefinite time in the future.

The plaintiff's accumulated earnings at the end of 1958 were sufficient, without implementation by any additional accumulation of the earnings of the taxable years, to provide for the needs of the plaintiff's business, as that business existed at the end of the taxable years, and to provide for the reasonably anticipated future needs of the business as

they existed on the basis of facts at the end of the taxable years.

26. In summary, the Court finds, based upon the entire record of the case, that avoidance of shareholder tax was one of the purposes for the accumulations of the earnings for the years in issue. United States v. Donruss Co., 393 U.S. 297, 89 S.Ct. 501, 21 L.Ed.2d 495 (1969).

### CONCLUSIONS OF LAW

27. The Court has jurisdiction of the parties to and the subject matter of this action. 28 U.S.C., Sec. 1346(a) (2).

28. The burden of proof herein was on the plaintiff. Fenco, Inc. v. United States, 234 F.Supp. 317, 322, n. 3 (DC Md., 1964), affirmed, 348 F.2d 456 (C.A. 4, 1965); Motor Fuel Carriers v. United States, 322 F.2d 576 (C.A.5, 1963); R. Gsell & Co. v. Commissioner of Internal Revenue, 294 F.2d 321 (C.A.2, 1961); Compton v. United States, 334 F.2d 212, 216 (C.A.4, 1964).

29. Section 532 of the Internal Revenue Code of 1954 imposes an accumulated earnings tax on "every corporation * * * availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by permitting earnings and profits to accumulate instead of being divided or distributed." A corporation is liable for the accumulated earnings tax when it permits its earnings and profits to accumulate "for the purpose of avoiding the income tax with respect to its shareholders." That forbidden purpose need not be the sole, primary, or dominant purpose of the accumulation; it is enough that such a purpose was one of the motives which prompted the accumulation beyond the reasonable needs of the business. United States v. Donruss Co., *supra.*

30. Treasury Regulations on Income Tax (1954 Code), Sec. 1.537–1(b) requires that the corporation "have specific, definite and feasible plans for the use of such accumulation." The business needs cannot be merely "subsequently declared intentions" or "an after-

thought to justify challenged accumulations of surplus." Smoot Sand & Gravel Corp. v. Commissioner, 241 F.2d 197, 202, after remand, 274 F.2d 495, 499 (CA 4th, 1960). To recognize a future problem and discuss possible solutions is not sufficient.